The STATE of Ohio, Appellee,

v.

LEONARD, Appellant.

[Cite as *State v. Leonard*, 157 Ohio App.3d 653, 2004-Ohio-3323.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–030492.

Decided June 25, 2004.

---

7. See, e.g., *Nickerson v. Nickerson* (May 22, 1998), 1st Dist. No. C–970431, 1998 WL 258448.

8. Id.

Michael K. Allen, Hamilton County Prosecuting Attorney, and Ronald W. Springman Jr., Assistant Prosecuting Attorney, for appellee.

David H. Bodiker, State Public Defender, Wendi Dotson and Randall Porter, Assistant Public Defenders, for appellant.

Per Curiam.

{¶ 1} Petitioner-appellant Patrick L. Leonard has taken the instant appeal from the denial of his petition for postconviction relief. He advances on appeal six assignments of error. We hold that Leonard was entitled to a hearing on his claim challenging the trial court's order that he wear a stun belt during his trial. Accordingly, we reverse in part the judgment of the common pleas court denying his postconviction petition.

{¶ 2} In June 2001, a Hamilton County jury found Leonard guilty of aggravated murder, felonious assault, attempted rape, and kidnapping, in connection with the shooting death of Dawn Flick and the wounding of Ryan Gries and Frank Minges. The trial court imposed for the charge of aggravated murder a sentence of death. Leonard's direct appeal remains pending before the Ohio Supreme Court.

{¶ 3} On July 30, 2002, Leonard filed with the common pleas court a petition, pursuant to R.C. 2953.21, to vacate or to set aside his convictions. He presented in his petition twelve claims for relief. The common pleas court denied the petition, and this appeal ensued.

I

{¶ 4} Leonard contends in his first assignment of error that the common pleas court's adoption of the findings of fact and conclusions of law submitted by the state violated his constitutional right to due process of law. In his second assignment of error, he challenges the adequacy of those findings of fact and conclusions of law. These challenges are untenable.

{¶ 5} The common pleas court's adoption of the findings of facts and conclusions of law submitted by the state did not, by itself, constitute error. See *State v. Calhoun* (1999), 86 Ohio St.3d 279, 714 N.E.2d 905. And we are unable to conclude that Leonard was thereby prejudiced, when the findings of fact and conclusions of law covered and pertained to the issues presented and provided the

legal and evidentiary bases for the court's decision. See id., paragraph three of the syllabus; accord *State v. Issa* (Sept. 29, 2000), 1st Dist. No. C–000091, 2000 WL 1434159. We, therefore, overrule the first and second assignments of error.

## II

{¶ 6} We address together Leonard's remaining assignments of error. He contends in his third and fourth assignments of error that the common pleas court erred in dismissing his postconviction claims without affording him discovery or the funds to retain experts to aid him in developing his claims. In his fifth assignment of error, he charges that the common pleas court erred in applying the doctrine of res judicata to bar his claims. And in his sixth assignment of error, he challenges the denial of his claims without an evidentiary hearing. We find these challenges to be well taken in part.

{¶ 7} To prevail on a postconviction claim, the petitioner must demonstrate a denial or infringement of his rights in the proceedings resulting in his conviction that rendered the conviction void or voidable under the Ohio Constitution or the United States Constitution. See R.C. 2953.21(A)(1). In advancing such a claim, the petitioner bears the initial burden of demonstrating, through the petition and any supporting affidavits and the files and records of the case, "substantive grounds for relief." See R.C. 2953.21(C).

{¶ 8} A postconviction claim is subject to dismissal without a hearing if the petitioner has failed to submit with his petition evidentiary material setting forth sufficient operative facts to demonstrate substantive grounds for relief. See id.; *State v. Pankey* (1981), 68 Ohio St.2d 58, 22 O.O.3d 262, 428 N.E.2d 413; *State v. Jackson* (1980), 64 Ohio St.2d 107, 18 O.O.3d 348, 413 N.E.2d 819. Conversely, "the court shall proceed to a prompt hearing on the issues" if "the petition and the files and records of the case show the petitioner is * * * entitled to relief." R.C. 2953.21(E).

{¶ 9} We note that the common pleas court denied most of Leonard's claims for relief, in whole or in part, under the doctrine of res judicata. "Under the doctrine of *res judicata*, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding[,] except an appeal from that judgment, any defense or any claimed lack of due process that was *raised or could have been raised by the defendant at the trial* [that] resulted in that judgment of conviction[ ] or on an appeal from that judgment." (Emphasis sic.) *State v. Perry* (1967), 10 Ohio St.2d 175, 39 O.O.2d 189, 226 N.E.2d 104, paragraph nine of the syllabus. Thus, a common pleas court may apply the doctrine of res judicata to dismiss a postconviction claim, when the claim presents a matter that could fairly have been determined

without resort to evidence dehors the record. Id.; *State v. Cole* (1982), 2 Ohio St.3d 112, 114, 2 OBR 661, 443 N.E.2d 169.

{¶ 10} We further note that Leonard's third and fourth assignments of error present, in essence, a challenge to the common pleas court's failure to permit discovery. We have long held that the postconviction statutes do not contemplate discovery in the initial stages of a postconviction proceeding. See *State v. Zuern* (Dec. 4, 1991), 1st Dist. Nos. C–900481 and C–910229, 1991 WL 256497; accord *State v. Byrd* (2001), 145 Ohio App.3d 318, 332–333, 762 N.E.2d 1043. We have also determined that the failure of the statutes to so provide does not contravene any state or federal constitutional right. See *State v. Jones* (Dec. 29, 2000), 1st Dist. No. C–990813, 2000 WL 1886307. Thus, Leonard was entitled to discovery to develop his claims and the experts to aid in that discovery only if the petition and its supporting evidentiary material demonstrated substantive grounds for relief. See *State v. Issa* (Dec. 21, 2001), 1st Dist. No. C–000793, 2001 WL 1635592.

## A. THE PROSECUTION'S MISUSE OF THE SUBPOENA POWER

{¶ 11} In his second claim for relief, Leonard contended that he was denied his constitutional right to a fair trial by the prosecution's use of subpoenas to compel the attendance of witnesses and to secure the production of documents for "nonjudicial" pretrial proceedings. In support of this claim, Leonard offered evidence of subpoenas that had been served upon a Kentucky law enforcement officer and upon a hospital's records custodian, ordering them to appear before the court, but directing them to report to the office of the prosecuting attorney. He also offered the affidavit of the mother of two of his children, who attested to her experience in responding to such a subpoena.

{¶ 12} Crim.R. 17 authorizes a court to issue a subpoena only to compel the attendance of a witness or the production of documents at a proceeding over which the trial court has jurisdiction. The rule does not compel a prospective witness to attend, or provide a means for discovery at, a pretrial interview with law enforcement officials. *State v. Campbell* (Jan. 8, 1997), 1st Dist. No. C–950746, 1997 WL 5182 (adopting the rule of *United States v. Keen* [C.A.6, 1975], 509 F.2d 1273); accord *State v. Cleveland Plain Dealer* (June 15, 1979), 8th App. Nos. 40531, 40532, and 40533. The remedy for a violation of the rule must be tailored to the prejudice sustained by the accused. Therefore, no remedial action is required when the accused has not been prejudiced. See *Campbell*, supra.

{¶ 13} The evidence offered in support of the second claim showed that the prosecution misused the Crim.R. 17 subpoena power. But Leonard failed to demonstrate how the prosecution's misconduct in this regard had prejudiced him.

We, therefore, hold that the common pleas court properly denied the second claim for relief, because Leonard failed to support the claim with evidentiary material setting forth sufficient operative facts to demonstrate substantive grounds for relief. See R.C. 2953.21(C); *Pankey,* supra; *Jackson,* supra.

## B. THE UNDERREPRESENTATION OF MINORITIES ON THE JURY VENIRE

{¶ 14} In his fourth claim for relief, Leonard contended that the under-representation of African–Americans on his petit jury venire constituted a denial of his rights to due process and equal protection and of his right to a jury consisting of a fair cross section of the community. He supported this claim with United States Census Bureau data for the county and juror questionnaires that had been completed by prospective jurors in his trial and in the trials of three other Hamilton County defendants who had been sentenced to death. This evidence was in existence and was available to the defense at the time of Leonard's trial. See *State v. Coleman* (Mar. 17, 1993), 1st Dist. No. C–900811, 1993 WL 74756. We, therefore, conclude that the common pleas court properly dismissed the fourth claim under the doctrine of res judicata. See *State v. Jones,* supra.

## C. INEFFECTIVE ASSISTANCE OF COUNSEL

{¶ 15} In claims for relief three, five, six, seven, and eight, Leonard contended that he was denied the effective assistance of counsel by his trial counsel's inadequate and incompetent preparation and presentation of his case during the guilt and penalty phases of his trial. We find no merit to these challenges.

{¶ 16} To prevail on a claim of ineffective assistance of defense counsel, a postconviction petitioner must demonstrate (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced him. See *Strickland v. Washington* (1984), 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674; *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373. To establish prejudice, the petitioner must demonstrate that counsel's deficient performance "so undermined the proper functioning of the adversarial process that the trial could not have reliably produced a just result." *State v. Powell* (1993), 90 Ohio App.3d 260, 266, 629 N.E.2d 13 (citing *Lockhart v. Fretwell* [1993], 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180; and *Strickland,* supra).

*1. Ineffective assistance of counsel during the guilt phase of trial*

{¶ 17} Leonard contended in his sixth claim for relief that his trial counsel had violated essential duties when they failed to present a speedy-trial challenge,

when they failed to address during the voir dire examination of prospective jurors various matters that had surfaced later at his trial, and when they adduced damaging testimony from defense witnesses at trial. New counsel had represented Leonard in his direct appeal to the Ohio Supreme Court, and these challenges to trial counsel's competence presented matters that could fairly have been determined without evidence dehors the record. These aspects of the sixth claim were, therefore, subject to dismissal without a hearing under the doctrine of res judicata. See *State v. Cole* (1982), 2 Ohio St.3d 112, 2 OBR 661, 443 N.E.2d 169.

{¶ 18} In his sixth claim, Leonard also challenged the adequacy of his trial counsel's cross-examination of certain state's witnesses, counsel's failure to present testimony by his sister, and counsel's failure to challenge the underrepresentation of African–Americans on his petit jury venire. And in his fifth claim, Leonard assailed the adequacy of the investigation conducted by counsel in preparing for the guilt phase of his trial.

{¶ 19} The evidence offered in support of these challenges to counsel's competence demonstrated neither counsel's violation of an essential duty to Leonard nor a reasonable probability that, but for the alleged omissions of counsel, either independently or collectively, the results of the guilt phase of his trial would have been different. See *Bradley*, supra. Leonard thus failed to sustain his initial burden of demonstrating substantive grounds for relief. Accordingly, we hold that the common pleas court properly denied without a hearing the sixth claim and the relevant aspects of his fifth claim. See *Pankey*, supra; *Jackson*, supra.

### 2. *Ineffective assistance of counsel during the penalty phase of trial*

{¶ 20} Leonard directed his seventh claim and the balance of his fifth claim against the adequacy and effectiveness of counsel's preparation for and presentation of the case in mitigation. The defense presented at trial a mitigation theory that proposed that Leonard was a good person who had acted out of character when he killed Dawn Flick. The evidentiary material offered by Leonard in support of his claims of counsel's ineffectiveness merely supported an alternative theory of mitigation. When, as here, counsel presented the case in mitigation competently, in view of the facts available to them, evidence offered to prove the existence of mitigation evidence that counsel had failed to present at trial, and that supported an alternative theory of mitigation, did not provide proof of counsel's ineffectiveness. See *State v. Post* (1987), 32 Ohio St.3d 380, 388–389, 513 N.E.2d 754. Because Leonard failed to demonstrate substantive grounds for relief, we hold that the common pleas court properly denied the seventh claim and the balance of the fifth claim. See *Pankey*, supra; *Jackson*, supra.

### 3. Ineffective assistance of mental-health expert

{¶ 21} In his eighth claim, Leonard contended that he had been denied the effective assistance of counsel and had been effectively denied his "right" to "a competent mental health examination * * * for purposes of the mitigation [phase of his trial]," because counsel had inadequately prepared and presented the testimony of the psychiatrist retained to examine Leonard, and because the psychiatrist had inadequately evaluated him and had incompetently testified at the mitigation hearing.

{¶ 22} In asserting his "right" to a competent mental-health evaluation, Leonard relied upon the decision of the United States Supreme Court in *Ake v. Oklahoma* (1985), 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53. This reliance was misplaced.

{¶ 23} The Supreme Court in *Ake* held that due process requires the government to provide an indigent criminal defendant with the funds to obtain expert assistance, upon a showing of benefit and fairness to the defendant. See *State v. Mason* (1998), 82 Ohio St.3d 144, 150, 694 N.E.2d 932. But Leonard was not indigent and thus was not provided with a mental-health expert at government expense. Moreover, we note that while a defendant charged with aggravated murder has a *statutory* right to "reasonably necessary" expert assistance, see R.C. 2929.024, a postconviction claim must be predicated upon the denial or infringement of a state or federal *constitutional* right. See R.C. 2953.21(A)(1). Finally, we agree with the Sixth Appellate District that the decision in *Ake* cannot reasonably be read to recognize a constitutionally based right to the effective assistance of an appointed mental-health expert, independent of the constitutional right to the effective assistance of counsel. See *State v. Baston* (Nov. 17, 2000), 6th Dist. No. L–98–1264, 2000 WL 1713768; accord *Wilson v. Greene* (C.A.4, 1998), 155 F.3d 396, 401; *Harris v. Vasquez* (C.A.9, 1990), 949 F.2d 1497, 1518; *Silagy v. Peters* (C.A.7, 1990), 905 F.2d 986, 1013; *Waye v. Murray* (C.A.4, 1989), 884 F.2d 765, 767; *Davie v. Mitchell* (N.D.Ohio 2003), 291 F.Supp.2d 573, 616. Thus, Leonard's eighth claim was reduced to yet another challenge to trial counsel's competence in presenting the case in mitigation.

{¶ 24} Leonard supported his eighth claim with a report prepared by a licensed clinical psychologist at the behest of the Office of the Ohio Public Defender, highlighting alleged deficiencies in the evaluation conducted and the testimony presented at the mitigation hearing by the psychiatrist retained by the defense. These alleged deficiencies included the psychiatrist's failure to identify and testify to the dysfunctional nature of Leonard's social and sexual relationships and his mother's culpability in his emotional development. The introduction of much of this evidence would only have served to undermine the defense's mitigation strategy. And, again, proof of the existence of evidence not presented in

mitigation that supported an alternative theory of mitigation did not prove counsel's ineffectiveness, when, as here, the record demonstrated that counsel had presented the case in mitigation competently in view of the facts available to them. See *State v. Post,* supra. Thus, upon our determination that Leonard failed to demonstrate substantive grounds for relief, we hold that the common pleas court properly denied the eighth claim. See *Pankey,* supra; *Jackson,* supra.

### 4. Counsel's conflicts of interest

{¶ 25} In his third claim for relief, Leonard contended that he was denied his Sixth Amendment right to conflict-free counsel. Specifically, he asserted that his counsel had had close personal ties to the members of his family who had retained and had paid counsel, and that counsel had simultaneously represented him in his criminal trial and him and his brothers' company in civil actions brought by the victims. These conflicts, Leonard asserted, had hampered counsel's willingness to uncover and to present at the mitigation hearing evidence concerning his dysfunctional family.

{¶ 26} The Sixth Amendment guarantees a criminal defendant the effective assistance of counsel and, in doing so, secures him the assistance of counsel free from conflicts of interest. See *Glasser v. United States* (1942), 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680. To prevail on a claim that he was denied his right to conflict-free counsel, a defendant must demonstrate "an actual conflict of interest." *Wood v. Georgia* (1981), 450 U.S. 261, 273, 101 S.Ct. 1097, 67 L.Ed.2d 220. An "actual conflict," for purposes of the Sixth Amendment, is "a conflict of interest that adversely affects counsel's performance." *Mickens v. Taylor* (2002), 535 U.S. 162, 172, 122 S.Ct. 1237, 152 L.Ed.2d 291, fn. 5. Therefore, to prove an actual conflict of interest, the defendant must show that his counsel "actively represented conflicting interests" and that the conflict "actually affected the adequacy of his representation." See id. (quoting *Cuyler v. Sullivan* [1980], 446 U.S. 335, 349–350, 100 S.Ct. 1708, 64 L.Ed.2d 333); accord *State v. Pelphrey,* 149 Ohio App.3d 578, 583, 2002-Ohio-5491, 778 N.E.2d 129; *State v. Haberek* (1988), 47 Ohio App.3d 35, 38, 546 N.E.2d 1361.

*a*

{¶ 27} We note at the outset that the right to conflict-free counsel not only imposes upon defense counsel an affirmative duty to ensure conflict-free representation, but also imposes upon the trial court an affirmative duty to inquire into the matter when the court knows or should know of a potential conflict. See *State v. Gillard* (1992), 64 Ohio St.3d 304, 595 N.E.2d 878, syllabus. We conclude that the court in the proceedings below incurred no such duty, when

the defendant offered no objection to his counsel's dual representation, and the record of the proceedings at trial contained no suggestion of a conflict of interest.

*b*

{¶ 28} A conflict of interest arises when counsel incurs a duty on behalf of one client "to contend for that which [his] duty to another client requires him to oppose." *State v. Manross* (1988), 40 Ohio St.3d 180, 182, 532 N.E.2d 735. Leonard alleged that such a conflict arose as a consequence of his counsel's simultaneous representation of him in his murder trial and of him and his brothers' company in the victims' civil actions.

{¶ 29} Leonard supported this allegation with copies of the complaints and entries filed in the civil actions. This evidentiary material showed that the victims had predicated their civil claims against the company upon the company's ownership of the van Leonard had driven to the murder victim's home, and that the plaintiffs in each action had voluntarily dismissed their claims against the company before trial.

{¶ 30} The dismissal of the company as a defendant in the civil actions left Leonard solely liable on the victims' claims. In that sense, the evidence might be said to have permitted a conclusion that counsel, in securing the company's dismissal from the victims' actions, had incurred a duty adverse to their duties in defending Leonard in the civil action. But the evidence disclosed no duty incurred by counsel in defending the company in the civil action that might be said to have been adverse to or in conflict with counsel's duties in defending Leonard against the criminal charges. Thus, Leonard failed to show an actual conflict arising from his counsel's simultaneous representation of him in his murder trial and of the company in the victims' civil actions.

*c*

{¶ 31} Leonard also contended that a conflict of interest arose from his counsel's close personal ties to his family. He asserted that his counsel had possessed "critical information" concerning his family that would have helped to explain his crime. Counsel's possession of this information, Leonard insisted, necessitated counsel's testimony at trial and thus required counsel, consistent with DR 5–102(A) of the Ohio Code of Professional Responsibility, to withdraw from representing him at trial.

{¶ 32} A criminal defense counsel's "breach of an ethical standard does not necessarily make out a denial of the Sixth Amendment guarantee of assistance of counsel." *Nix v. Whiteside* (1986), 475 U.S. 157, 165, 106 S.Ct. 988, 89 L.Ed.2d 123. Moreover, the evidence offered in support of Leonard's petition,

coupled with the record of the proceedings at trial, showed the existence of a multitude of witnesses to "the dysfunctional dynamics of the Leonard family." In the absence of evidence that only his counsel could have provided this "critical information," Leonard failed to demonstrate that a conflict of interest arose from, and persisted as a consequence of, his counsel's failure to conform to the ethical standard by withdrawing from representing him and instead testifying on his behalf at trial.

*d*

{¶ 33} Finally, Leonard contended that his counsel had breached their duty to present an adequate and effective case in mitigation because they had labored under a conflict of interest arising from the fact that his family members had retained and paid them. Courts have recognized the dangers that inhere when a criminal defendant is represented by a lawyer hired and paid by a third party. See *Wood v. Georgia*, 450 U.S. at 268–269, 101 S.Ct. 1097, 67 L.Ed.2d 220. But, as we noted supra, the Sixth Amendment right to conflict-free counsel protects against " 'an actual conflict of interest' * * *—as opposed to a mere theoretical division of loyalties." *Mickens v. Taylor*, 535 U.S. at 172, 122 S.Ct. 1237, 152 L.Ed.2d 291 (quoting *Wood v. Georgia*, 450 U.S. at 273, 101 S.Ct. 1097, 67 L.Ed.2d 220). Thus, Leonard was required to demonstrate not only that his counsel had "actively represented conflicting interests," but also that the conflict had "actually affected the adequacy of [their] representation." See id. (citing *Cuyler v. Sullivan*, 446 U.S. at 349–350, 100 S.Ct. 1708, 64 L.Ed.2d 333). As we concluded supra, the record of the proceedings at trial demonstrated that counsel had presented the case in mitigation competently in view of the facts available to them. And nothing in the evidentiary material submitted by Leonard in support of his claim suggested the contrary. Leonard thus failed to demonstrate a causative link between the alleged conflict of interest and an inadequacy in his counsel's representation.

{¶ 34} Upon our determination that Leonard failed to demonstrate in any respect a violation of his Sixth Amendment right to conflict-free counsel, we hold that the common pleas court properly denied his third claim for relief without a hearing. See *Pankey*, supra; *Jackson*, supra.

## D. THE PROSECUTION'S FAILURE TO DISCLOSE EXCULPATORY EVIDENCE

{¶ 35} Leonard contended in his ninth claim for relief that the state had failed to disclose, in response to his discovery requests, exculpatory evidence. In making this claim, Leonard neither specified the undisclosed exculpatory evidence nor supported his claim with evidence dehors the record. He instead cited

nondisclosure claims made in other capital cases before the United States District Court for the Southern District of Ohio to show that the nondisclosure of exculpatory evidence by the Office of the Hamilton County Prosecuting Attorney had been "identified [as] an ongoing systemic problem." This "problem," Leonard argued, "warrant[ed] the granting of discovery to demonstrate that the chronic problem continued in [his] case."

{¶ 36} As we noted supra, a postconviction petitioner is not entitled to discovery to develop a claim if the claim and its supporting evidentiary material do not demonstrate substantive grounds for relief. See *State v. Issa*, supra. And a postconviction claim is subject to dismissal without a hearing if the petitioner has failed to support the claim with evidentiary material setting forth sufficient operative facts to demonstrate substantive grounds for relief. See R.C. 2953.21(C); *State v. Pankey*, supra; *State v. Jackson*, supra. In the absence of some demonstration of such grounds, we conclude that the common pleas court properly dismissed Leonard's ninth claim without a hearing and without permitting discovery on the matter. Accord *State v. Lynch* (Dec. 21, 2001), 1st Dist. No. C–010209, 2001 WL 1635760.

### E. THE CONSTITUTIONALITY OF LETHAL INJECTION

{¶ 37} In his tenth claim for relief, Leonard challenged the constitutionality of the state's use of lethal injection as a means of execution. The Ohio Supreme Court held in *State v. Carter* (2000), 89 Ohio St.3d 593, 608, 734 N.E.2d 345, that execution by lethal injection does not run afoul of the Eighth Amendment's proscription against cruel and unusual punishment. We, therefore, hold that the common pleas court properly denied Leonard's tenth claim.

### F. THE CONSTITUTIONALITY OF R.C. 2953.21

{¶ 38} In his eleventh claim for relief, Leonard contended that R.C. 2953.21 violates the Fifth, Sixth, Eighth, Ninth, and Fourteenth Amendments to the United States Constitution. As we noted supra, R.C. 2953.21(A)(1) requires a postconviction petitioner to demonstrate a denial or infringement of his rights *in the proceedings resulting in his conviction that rendered the conviction void or voidable* under the state or federal constitution. The constitutional deprivations asserted by Leonard in his eleventh claim did not occur during the proceedings resulting in his convictions. And a determination that the postconviction statutes were constitutionally infirm would not have rendered his convictions void or voidable. Moreover, we held in *State v. Fautenberry* (Dec. 31, 1998), 1st Dist. No. C–971017, 1998 WL 906395, that R.C. 2953.21 satisfies the requirements of due process. We, therefore, conclude that the common pleas court properly denied the eleventh claim for relief.

### G. LEONARD'S RESTRAINT BY A STUN BELT

{¶ 39} We turn at last to Leonard's first claim for relief. In his first claim, Leonard contended that the trial court's order that he be restrained throughout his trial by an electronic immobilization belt, or "stun belt," had violated his rights to a fair trial, due process of law, the presumption of innocence, and the effective assistance of counsel. Specifically, he asserted that his restraint by the stun belt in the presence of the jury had stripped him of the physical indicia of innocence, had hampered his ability to assist his counsel, had created a risk that the jury might improperly consider as a sentencing factor his future dangerousness, and had precluded him from proving in mitigation of the death sentence his ability to adjust to incarceration.

{¶ 40} The record discloses that, prior to trial, the defense filed a motion requesting that Leonard be permitted to appear without restraints at all proceedings before the trial court because he had not shown himself to pose a flight or security risk. The trial court essentially denied the motion, declaring that it would accept the recommendation of security made by the Hamilton County Sheriff.

{¶ 41} Leonard supported his postconviction claim with an instruction manual that the Hamilton County Sheriff's Office had issued to its Court Services Division, outlining the purposes and uses of the stun belt, and a notification form that Leonard had signed, advising him of the sheriff's requirement that he wear the belt, the circumstances under which the belt might be activated, and the consequences of its activation.

{¶ 42} Leonard supported his claim with his own affidavit and the affidavits of five siblings who had attended his trial. Leonard asserted that he had had no prior criminal record, and that he had presented neither disciplinary problems while in jail nor security problems during pretrial proceedings. He supported this assertion with copies of the records from his confinement. He further averred that the deputy sheriffs who had wielded the stun belt's remote control had warned him that they would activate the belt if he said anything that they deemed "verbally aggressive" or if he made what they perceived as a "quick move[ment]." Leonard insisted that these and similar admonitions, coupled with his knowledge of the consequences of the belt's activation, had distracted him from the proceedings at trial and had made him reluctant to interact with his counsel.

{¶ 43} In their affidavits, Leonard's siblings attested to their observations that, throughout the trial, two deputy sheriffs had stood close by Leonard's side, even when, during the penalty phase of the trial, he had taken the stand to make his unsworn statement. Leonard's siblings asserted, variously, that he or she had

noticed the stun belt because the belt had been bulky, because Leonard had been apparently discomfited by it, and because the deputies had constantly hovered about Leonard and had openly exchanged the stun belt's remote control.

{¶ 44} The Due Process Clause of the Fourteenth Amendment guarantees a criminal defendant a fair trial, an important component of which is the presumption of innocence. See *Coffin v. United States* (1895), 156 U.S. 432, 453, 15 S.Ct. 394, 39 L.Ed. 481. The Sixth Amendment secures the defendant's right to confer with his counsel and to assist in his defense. The placing of restraints upon a criminal defendant during his trial may significantly affect the jury's perception of the defendant, and may thus infringe upon the presumption of innocence, by stripping the defendant of the physical indicia of innocence. Restraints may also impede the defendant's ability, and thus implicate his Sixth Amendment right, to confer with his counsel and to assist in his defense. Moreover, the use of restraints may "affront * * * the very dignity and decorum of judicial proceedings that the judge[,] [by imposing the restraints, was] seeking to uphold." *Illinois v. Allen* (1970), 397 U.S. 337, 344, 90 S.Ct. 1057, 25 L.Ed.2d 353.

{¶ 45} The decision to use restraints is committed to the sound discretion of the trial court. Id., 397 U.S. at 343–344, 90 S.Ct. 1057, 25 L.Ed.2d 353. But because their use is an "inherently prejudicial practice," *Holbrook v. Flynn* (1986), 475 U.S. 560, 568–569, 106 S.Ct. 1340, 89 L.Ed.2d 525, restraints may be employed only as a "last resort," *Illinois v. Allen,* 397 U.S. at 344, 90 S.Ct. 1057, 25 L.Ed.2d 353, and only when justified "by an essential state interest specific to each trial." *Holbrook v. Flynn,* 475 U.S. at 568–569, 106 S.Ct. 1340, 89 L.Ed.2d 525; see, also, *United States v. Brooks* (C.A.7, 1997), 125 F.3d 484, 502 (holding that the risk of prejudice inherent in restraints also entitles a defendant to the minimum restraints necessary and to the least obvious ones).

{¶ 46} Neither the United States Supreme Court nor the Ohio Supreme Court has addressed the practice of using a stun belt to restrain a criminal defendant during his trial.[1] Courts that have addressed the issue have recognized that the use of a stun belt raises all of the concerns surrounding the use of traditional in-court restraints and presents some risks of its own. For example, placing a stun belt on a defendant who is all too aware of the possible consequences of the belt's activation presents "a far more substantial risk of interfering with [his] Sixth Amendment right to confer with counsel than do leg shackles" and may further

---

**1.** In *State v. Smith,* 1st Dist. No. C–020610, 2004-Ohio-250, 2004 WL 102285, the appellant presented this court with a challenge to the trial court's order that he wear a stun belt during his trial. But our reversal of the judgment of conviction on other grounds precluded us from addressing this challenge on its merits.

affect his right to be present at trial and to participate in his defense by providing "a considerable impediment to [his] ability to follow the proceedings and take an active interest in the presentation of his case." *United States v. Durham* (C.A.11, 2002), 287 F.3d 1297, 1305–1306. Moreover, wearing a stun belt may lead to an "increase in anxiety" that may "materially impair and prejudicially affect" a defendant's ability, and thus his right, to testify on his own behalf. *People v. Mar* (2002), 28 Cal.4th 1201, 1224, 124 Cal.Rptr.2d 161, 52 P.3d 95. Therefore, courts have subjected the "decision to use a stun belt * * * to at least the same close judicial scrutiny required for the imposition of other physical restraints." *United States v. Durham*, 287 F.3d at 1306.

{¶ 47} The Ohio Supreme Court has declared that "the presence of restraints tends to erode the presumption of innocence that our system attaches to every defendant." *State v. Franklin*, 97 Ohio St.3d 1, 2002-Ohio-5304, 776 N.E.2d 26, at ¶ 79. Therefore, "[t]he usual practice * * * is for a defendant to appear in court while free of [restraints]," id., and a trial court may order a defendant to appear in restraints only under "unusual circumstances."

{¶ 48} The trial court is uniquely situated to determine the risks of violence or escape, upon its consideration of "the [defendant's] actions both inside and outside the courtroom, as well as his demeanor while court is in session." Id. For that reason, the decision to impose restraints is committed to the sound discretion of the trial court. See *State v. Richey* (1992), 64 Ohio St.3d 353, 358, 595 N.E.2d 915.

{¶ 49} The Supreme Court in *State v. Franklin*, supra, 97 Ohio St.3d 1, 776 N.E.2d 26, at ¶ 82, recognized that a hearing on the need for restraints served to facilitate meaningful appellate review. While it declined to set down an "absolute rule," the court "stress[ed] that the preferred and encouraged practice prior to [imposing restraints upon] a defendant during any phase of trial is to hold a hearing on the matter." Id. With or without a hearing, a trial court's exercise of its discretion to impose restraints may not be disturbed on appeal if the record discloses "facts and circumstances surrounding [the] defendant [that] illustrate a compelling need to impose exceptional security procedures." Id.

{¶ 50} In the absence of a hearing on the need for restraints, the record of the proceedings at Leonard's trial manifested no such need. Leonard stood charged with a variety of violent crimes. But the violent nature of the crimes for which Leonard was being tried could not, standing alone, justify the requirement that Leonard wear the stun belt. See *Miller v. State* (Fla.App.2003), 852 So.2d 904, 906 (noting that "allowing the charges of violence[ ] for which [a defendant was standing] trial[ ] to justify the use of restraint devices is circular reasoning that offends the presumption of innocence[ ] and [hence the defendant's] right to

a fair trial"). And the record at this time otherwise disclosed no circumstance that might be said to have "illustrate[d] a compelling need to impose exceptional security procedures."

{¶ 51} The evidence submitted by Leonard in support of his postconviction petition showed that he had had no criminal record and that he had displayed no violent tendencies either while in the custody of the sheriff's office or during the proceedings before the trial court that had preceded the denial of his motion to appear before the jury without restraints. As we noted supra, Leonard's theory of defense and mitigation (which we have, at the state's urging, found to be at least competent) was that Leonard was not a violent man who had visited his violent nature upon the victims but an essentially peaceful man who had acted out of character on the night in question. The evidence offered by Leonard in support of his petition showed that the stun belt was discernible to spectators in the courtroom and that the stun belt could also have been discernible to the jurors. Leonard argues that the apparent presence of these restraints would have suggested to the jurors that Leonard was not capable of self-restraint.

{¶ 52} Leonard's petition, with its supporting affidavits and the files and the records of the case, established his entitlement to a hearing on his first postconviction claim. See R.C. 2953.21(E). We, therefore, hold that the common pleas court erred when it dismissed the first claim without a hearing. Accordingly, we sustain the third through sixth assignments of error to the extent that they challenge the dismissal of Leonard's first postconviction claim without a hearing. And upon our determination that the common pleas court properly dismissed the remaining postconviction claims, we overrule the balance of those assignments of error.

### III

{¶ 53} Having thus determined that Leonard established an entitlement to an evidentiary hearing on his first claim for relief, we reverse in part the judgment entered below and remand this case for further proceedings consistent with the law and this Decision. In all other respects, we affirm the judgment of the common pleas court.

Judgment accordingly.

DOAN, P.J., SUNDERMANN and GORMAN, JJ., concur.