OPINION.
{¶ 1} Defendant-appellant Erik James Earhart appeals from his convictions for one count of rape and four counts of gross sexual imposition. The convictions involved sexual conduct or contact with four female victims under thirteen years of age. Following a jury trial, the trial court found Earhart to be a sexual predator and sentenced him to the maximum prison term for each conviction: ten years for the rape, and five years for each gross sexual imposition. The trial court ordered the prison terms to be served consecutively for a total term of thirty years' imprisonment. In eight assignments of error, Earhart now claims that the trial court erred: 1) by requiring him to wear a stun belt under his civilian clothes during trial; 2) by failing to suppress a video recording of his police interview; 3) by permitting the use of a videotaped deposition of one of the victims at trial; 4) by entering a judgment of conviction not supported by sufficient evidence; and, 5) by imposing an unlawfully lengthy prison sentence. We disagree.
 {¶ 2} In May 2001, Earhart, a bus driver and chaperone for a group of Michigan children participating in a band competition, visited the Preston Hotel in Sharonville, Ohio. A young girl not affiliated with the band was celebrating her tenth birthday with friends at the hotel pool. Earhart approached the girls, spoke with them, and asked one of the girls to accompany him to his hotel room while he changed into his swimsuit. She declined. When Earhart returned to the pool, he joined the girls' games. He picked the children up and threw them into the air. Each of the four female victims described that while Earhart was picking them up, he forcefully rubbed their pubic regions.
 {¶ 3} Earhart followed the children into a nearby hot tub. There he digitally raped one of the ten-year-old victims. One of the other victims saw the rape. With the rape victim in tears, the girls left the hot tub. The victim told her mother about the attack. The mother summoned Sharonville police and Earhart was arrested. The rape victim was examined at Children's Hospital. Doctors found vaginal abrasions consistent with sexual abuse.
 {¶ 4} In his first assignment of error, Earhart argues that the trial court erred by requiring him to wear a stun belt while acting as his own trial counsel. The decision to impose restraints, including a stun belt, is committed to the sound discretion of the trial court. See State v. Leonard,157 Ohio App.3d 653, 2004-Ohio-3323, 813 N.E.2d. 50, at ¶ 48; see, also,State v. Frazier, 1st Dist. Nos. C-030571 and C-030572, 2004-Ohio-4108.
 {¶ 5} Here, the trial court conducted a pretrial hearing. Cf.State v. Leonard at ¶ 49. It heard evidence about the operation of the stun belt and about the need for the stun belt to maintain the safe, reasonable, and orderly progress of the trial, particularly where the defendant was acting as his own counsel and, of necessity, needed to move between counsel's table, exhibits, and the witness stand See State v. Frazier at ¶ 4 and ¶ 6. Earhart also received information about the operation of the belt. The trial court identified areas of the courtroom in which Earhart could move freely without fear of being stunned, and it imposed the same movement restrictions on the assistant prosecutor. Earhart wore the stun belt beneath his civilian clothes, and there is no evidence that the jury was aware of the stun belt. Moreover, he played an active role in his defense at trial. The trial court's decision was reasonable under the circumstances and was not an abuse of its discretion. The assignment of error is overruled.
 {¶ 6} Earhart next argues that the trial court erred by overruling his motion to suppress a video recording made of him during the interview conducted by Officer Blaskey at the Sharonville police headquarters. The carefully redacted recording showed Earhart energetically chewing his fingernails after Officer Blaskey had stepped from the interview room to obtain assistance in taking DNA samples from beneath Earhart's fingernails. The samples might have disclosed evidence that Earhart had digitally raped one of the child victims. As Earhart previously had invoked his right to counsel after answering questions about the events earlier that evening, he claims that the recording was made in violation of his Fifth Amendment right against self-incrimination and his Sixth Amendment right to counsel.
 {¶ 7} An appellate court reviewing a trial court's ruling on a motion to suppress must give great deference to the trial court's findings of historical fact. See State v. Mills (1992),62 Ohio St.3d 357, 366, 582 N.E.2d 972. The reviewing court must independently determine, as a matter of law, however, whether the facts meet the appropriate legal standard. See Ornelas v. UnitedStates (1996), 517 U.S. 690, 696-699, 116 S.Ct. 1657; see, also,State v. Deters (1998), 128 Ohio App.3d 329, 334,714 N.E.2d 972.
 {¶ 8} When a defendant in custody requests an attorney, the police must stop all interrogation until an attorney is present, unless the accused himself initiates further communication. SeeMiranda v. Arizona (1966), 384 U.S. 436, 474, 86 S.Ct. 1602. If the police improperly interrogate the accused after he has invoked his right to counsel, any incriminating statements are inadmissible against the accused. See Edwards v. Arizona
(1981), 451 U.S. 477, 484-485, 101 S.Ct. 1880. Interrogation refers not only to explicit questioning but also to any words or actions on the part of a police officer, excepting those normally incident to arrest and custody, that the officer should know are reasonably likely to induce an incriminating response from the accused. See Rhode Island v. Innis (1980), 446 U.S. 291,300-301, 100 S.Ct. 1682; see, also, State v. Williams (1983),6 Ohio St.3d 281, 452 N.E.2d 1323, paragraph five of the syllabus.
 {¶ 9} Invoking the right to counsel does not, however, require the police to cease obtaining evidence of criminal wrongdoing or to insulate the defendant's subsequent conduct from all scrutiny. For example, if the accused makes a statement in response to words or actions by the police that do not constitute interrogation, the police are not prohibited from "merely listening" to his voluntary statement. See Edwards v. Arizona,451 U.S. at 485, 101 S.Ct. 1880. Neither are the police prohibited from obtaining nontestimonial evidence. See, e.g.,Schmerber v. California (1966), 384 U.S. 757, 761,86 S.Ct. 1826.
 {¶ 10} The rules guarding against self-incrimination prevent the police from using the coercive nature of confinement to extract incriminating statements that would not be given in an environment without restraints. See Arizona v. Mauro (1987),481 U.S. 520, 529-530, 107 S.Ct. 1931. Here, Earhart's response to the imminent DNA sampling was not the result of police interrogation, but was rather a voluntary act that was not subject to suppression. The trial court did not err in denying the motion to suppress, and the second assignment of error is overruled.
 {¶ 11} In his third assignment of error, Earhart claims that the trial court erred in allowing the videotaped deposition of one of the child victims to be played before the jury. Pursuant to Crim.R. 15(F), deposition testimony may be used during a trial in lieu of live testimony if "the witness is out of the state, unless it appears that the absence of the witness was procured by the party offering the deposition * * *." The use of a videotaped deposition during a trial does not violate a defendant's right to confrontation so long as the defendant and his attorney were present during the deposition and the defendant was able to cross-examine the witness. See State v. Phillips (1995),74 Ohio St.3d 72, 95, 656 N.E.2d 643.
 {¶ 12} Here, the state moved to admit the eleven-year-old victim's videotaped deposition because, as both parties knew, she was to be out of state on a previously scheduled family vacation at the time of trial. Earhart was present during the entire deposition, the victim testified under oath, and she was cross-examined by Earhart, acting as his own counsel. Earhart's court-appointed counsel-advisor was also present. The assignment of error is overruled.
 {¶ 13} In two interrelated assignments of error, Earhart challenges the weight and the sufficiency of the evidence adduced at trial to support his convictions. Our review of the record fails to persuade us that the jury, sitting as the trier of fact, clearly lost its way and created such a manifest miscarriage of justice that the convictions must be reversed and a new trial ordered. See State v. Thompkins, 78 Ohio St.3d 380, 387,1997-Ohio-52, 678 N.E.2d 541. The jury was entitled to reject Earhart's theory that he did not touch the four female victims for purposes of sexual gratification. The state offered testimony from the victims and several eyewitnesses describing how Earhart had touched and rubbed the vaginal areas of the four victims and how he had digitally raped one victim in the hot tub. As the weight to be given the evidence and the credibility of the witnesses were primarily for the trier of fact to determine, seeState v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus, the jury, in resolving conflicts in the testimony, could properly have found Earhart guilty of gross sexual imposition and rape.
 {¶ 14} The record also reflects substantial, credible evidence from which the jury could have reasonably concluded that the state had proved all elements of the charged crimes beyond a reasonable doubt. See State v. Waddy (1991), 63 Ohio St.3d 424,588 N.E.2d 819, certiorari denied (1992), 506 U.S. 921,113 S.Ct. 338. The fourth and fifth assignments of error are overruled.
 {¶ 15} In the final two assignments of error, Earhart argues that the trial court failed to articulate the statutory findings required to impose maximum and consecutive sentences for each of the charged offenses.
 {¶ 16} To impose a maximum sentence upon one who is not a major drug offender or a repeat violent offender, a trial court must find that the felon either committed one of the "worst forms of the offense" or posed the greatest likelihood of recidivism. See R.C. 2929.14(C). A trial court sentencing an offender to a maximum prison term must make the required findings and specify on the record its reasons supporting those findings. See R.C.2929.19(B)(2)(d); see, also, State v. Edmonson,86 Ohio St.3d 324, 1999-Ohio-110, 715 N.E.2d 131.
 {¶ 17} Here, the trial court marked on the felony sentencing worksheet, and agreed in open court, that Earhart posed the greatest likelihood to commit similar future offenses. See R.C.2929.14(C). During the sentencing hearing, the trial court based its conclusion that recidivism was very likely upon Earhart's prior juvenile delinquencies, his adult conviction for a similar sexual assault on a minor child, the clinical evaluation made as part of the presentence investigation, and the boldness of his attack upon the victims in a public area. The trial court also noted the seriousness of the harm inflicted upon the child victims, including the possibility of transmission of the HIV virus carried by Earhart. Because the trial court gave appropriate reasons supporting its finding that Earhart posed the greatest likelihood to commit future offenses, it properly imposed the maximum sentences.
 {¶ 18} With respect to the consecutive sentences, the trial court complied with R.C. 2929.14(E)(4) when it stated at the sentencing hearing that it was imposing the sentences to protect the public and to punish Earhart, that consecutive sentences were not disproportionate to the seriousness of his conduct or to the danger he posed to the public, and that a single prison term would demean the seriousness of the offenses. The trial court supported these findings and gave its reasons by noting the great physical and emotional harm caused by Earhart, his prior conviction for fondling a five-year-old girl in Michigan, his juvenile record, and the psychological evaluations contained in the pre-sentence investigation. The trial court fully complied with R.C. 2929.14(E)(4) and 2929.19(B)(2)(c) in imposing the consecutive sentences. See State v. Comer, 99 Ohio St.3d 463,2003-Ohio-4165, 793 N.E.2d 473. The sixth and seventh assignments of error are overruled.
 {¶ 19} Therefore, the judgment of the trial court is affirmed.
Judgment affirmed.
Winkler, P.J., and Doan, J., concur.