DECISION. *Page 2 
{¶ 1} Petitioner-appellant Patrick L. Leonard appeals the Hamilton County Common Pleas Court's judgment denying his petition for postconviction relief. We affirm the court's judgment.
 {¶ 2} In 2001, Leonard was convicted of aggravated murder, felonious assault, attempted rape, and kidnapping, in connection with the shooting death of Dawn Flick and the wounding of Ryan Gries. For aggravated murder, the trial court sentenced Leonard to death. The Ohio Supreme Court affirmed his convictions.[1]
 {¶ 3} While his appeal to the supreme court was pending, Leonard filed with the common pleas court a petition for postconviction relief under R.C. 2953.21 et seq. The common pleas court denied the petition, and Leonard appealed that decision to this court. We reversed the court's judgment in part and remanded for a hearing on Leonard's postconviction claim challenging the trial court's order that he be restrained throughout his trial by an electronic immobilization device known as a "stun belt."[2] Following the hearing, the common pleas court again denied the claim, and this appeal ensued.
 {¶ 4} Leonard presents on appeal three assignments of error. The assignments of error, when reduced to their essence, challenge the balance struck by the common pleas court in weighing the evidence adduced at the hearing on his postconviction claim. This challenge is untenable.
 I. The Law Governing the Use of Restraints {¶ 5} Imposing restraints on a criminal defendant during his trial violates the Sixth Amendment to the United States Constitution if the restraints impede the *Page 3 
defendant's ability to confer with counsel or to assist in his defense. And the use of restraints infringes upon the presumption of innocence, secured by the fair-trial guarantee of the Fourteenth Amendment, if the restraints affect how the defendant is perceived by those charged with determining his guilt.[3]
 {¶ 6} The decision to require a defendant to wear a stun belt at trial is, like the decision to require any other physical restraint, committed to the sound discretion of the trial court.[4] But the court's discretion is not unfettered.[5] The violent nature of the crimes for which a defendant is being tried will not alone justify the use of a stun belt.[6] A stun belt may be used only under "unusual circumstances"[7] and only as a "last resort."[8] And a court may order a stun belt only when the record shows that restraints are justified "by an essential state interest specific to each trial,"[9]
and when, upon consideration of "the [defendant's] actions both inside and outside the courtroom, as well as his demeanor while court is in session," the court finds that the stun belt is necessary to advance that state interest.[10]
 {¶ 7} A trial court, having been charged with the responsibility to determine the need for a stun belt, may not delegate that responsibility to law enforcement authorities.[11] A hearing on the need for a stun belt, while not mandatory, is the better *Page 4 
practice because it serves to facilitate meaningful appellate review.[12] But with or without a hearing, a trial court's exercise of its discretion to use a stun belt will not be disturbed on appeal if the record discloses "facts and circumstances surrounding [the] defendant [that] illustrate a compelling need to impose exceptional security procedures * * * ."[13]
 II. Leonard's Stun-Belt Claim {¶ 8} Before Leonard's trial, the defense had filed a motion requesting that he be permitted to appear at trial without restraints. The trial court did not conduct a hearing on the motion. It instead summarily rejected the request, expressly deferring to the policy of the Court Services Division of the Hamilton County Sheriffs Office that all death-eligible defendants be restrained by a stun belt. Thus, the trial record did not demonstrate an essential state interest specific to Leonard's trial that could be said to have justified requiring that he be so restrained.[14]
 {¶ 9} At the hearing on our remand of Leonard's postconviction stun-belt claim, the state sought to remedy this deficiency. Leonard testified at the hearing that he had had no prior criminal record; that he had turned himself into the police; that he had displayed no violent tendencies while in the custody of sheriffs deputies or during those proceedings before the trial court where he had appeared without a stun belt; that the stun belt had caused both physical and psychological discomfort; that this discomfort had restricted his communications with his counsel; and that he had complained of his discomfort to his counsel, to the deputies who had outfitted him with the belt, and to friends who had visited him in jail.
 {¶ 10} Leonard's sister testified that the six-inch-square stun-belt receiver strapped to Leonard's midsection had been apparent to all observers in the courtroom *Page 5 
because of his uncharacteristically stiff and stoical bearing at trial, and because of the open manner in which the sheriffs deputies had handled the stun belt's remote control. In his videotaped deposition, a Catholic priest who had counseled Leonard, and who had attended and testified at trial, seconded Leonard's sister's observations concerning Leonard's demeanor at trial, but confessed that he had not been aware of the stun belt.
 {¶ 11} A psychologist provided expert opinion testimony that Leonard's fear that the stun belt would be activated, exacerbated by his prior experiences with electrical shock, might have modified his behavior, his appearance, and his interaction with his counsel. And news footage from the penalty phase of the trial, depicting Leonard's walk to the witness stand to give his unsworn statement, showed, for a few seconds, a bulge on his back.
 {¶ 12} The state countered this evidence with testimony by court personnel, including sheriffs deputies who had provided security for Leonard's trial, an assistant prosecuting attorney, the court's bailiff, and the court reporter. The deputies testified that, at the time of Leonard's trial, the supervisor of the sheriffs office's Court Services Division had determined the extent and type of courtroom security needed and had, as a matter of policy, used a stun belt in all capital cases. Following this court's 2004 decision in Leonard's appeal from the denial of his postconviction petition, the sheriffs office changed its procedure to require submission of the matter of restraints to the trial court at a hearing.
 {¶ 13} The state insisted that, regardless of this procedural lapse, the circumstances surrounding Leonard's trial had justified requiring him to wear a stun belt. The deputies testified that the violent nature of Leonard's crimes and the possibility of a death sentence made Leonard's trial "high-risk." They asserted that the presence in the small courtroom of a large number of supporters both for Leonard and *Page 6 
for the murder victim, along with special considerations like the victim's father's suicide, made for a "tense" and "emotional" courtroom.
 {¶ 14} The state's witnesses asserted that the stun belt had not been visible under Leonard's shirt, and that the defense table had concealed it when he was seated. They stated that the deputy responsible for the remote control had been stationed at the back of the courtroom and had concealed the remote either by cupping it in his hand or by clipping it to his belt. They asserted that they had neither observed nor heard Leonard complain about any discomfort caused by the stun belt, and that they had not perceived Leonard to be limited by the stun belt in his communications with his counsel.
 {¶ 15} Following the hearing, the common pleas court denied Leonard's postconviction claim upon its conclusion that the circumstances of Leonard's trial showed that the trial court had been justified in ordering Leonard's restraint with the stun belt. Specifically, the court concluded that the stun belt furthered the state's essential interest in maintaining the security of the crowded, "emotional," and "tension-filled" courtroom, during a trial that was, for security purposes, "high risk." The court also concluded that, although the stun belt had been visible to Leonard's sister and on the news footage, Leonard had failed to prove that he had been stripped of the physical indicia of innocence, or that his restraint with the stun belt had factored into the jury's determination of his future dangerousness or ability to adjust to incarceration, because nothing suggested that the stun belt had been visible to the jurors or that the stun belt had been identifiable as such. The court also found less than credible, in light of the testimony of other witnesses, Leonard's statements concerning his discomfort with the stun belt and the limits the stun belt had imposed on his interaction with his counsel. And the court found less than compelling, in light of its contradictions, the psychologist's testimony concerning the negative impact of the stun belt on Leonard's manner, *Page 7 
appearance, or ability to interact with counsel. Thus, the court concluded that Leonard had failed to prove that the order that he wear the stun belt infringed on his right to confer with counsel and to assist in his defense.
 {¶ 16} Our review of Leonard's challenge on appeal, to the balance struck by the common pleas court in weighing the evidence adduced at the hearing on his postconviction claim, entails an inquiry into whether the court's findings were "supported by competent and credible evidence."[15] The record of the hearing provides competent and credible evidence to support the common pleas court's conclusion that the circumstances surrounding Leonard's trial demonstrated a compelling need for exceptional security in the form of a stun belt. We, therefore, hold that the common pleas court properly denied Leonard's claim. Accordingly, we overrule the assignments of error and affirm the judgment of the common pleas court.
Judgment affirmed.
SUNDERMANN, J., concurs.
PAINTER, P.J., dissents.
[1] See State v. Leonard, 104 Ohio St.3d 54, 2004-Ohio-6235,818 N.E.2d 229.
[2] See State v. Leonard, 157 Ohio App.3d 653, 2004-Ohio-3323,813 N.E.2d 50.
[3] See Illinois v. Allen (1970), 397 U.S. 337, 344, 90 S.Ct. 1057;Coffin v. United States (1895), 156 U.S. 432, 453, 15 S.Ct. 394;State v. Franklin, 97 Ohio St.3d 1, 2002-Ohio-5304, 776 N.E.2d 26, at ¶ 79.
[4] See State v. Adams, 103 Ohio St.3d 508, 2004-Ohio-5845,817 N.E.2d 29, at ¶ 104, citing State v. Richey, 64 Ohio St.3d 353, 358,1992-Ohio-44, 595 N.E.2d 915.
[5] See State v. Adams, 103 Ohio St.3d 508, at ¶ 104-110.
[6] See State v. Leonard, 157 Ohio App.3d 653, at ¶ 50.
[7] State v. Adams, 103 Ohio St.3d 508, at ¶ 104, quoting State v.Kidder (1987), 32 Ohio St.3d 279, 285, 513 N.E.2d 311.
[8] See State v. Leonard, 157 Ohio App.3d 653, at ¶ 45, quotingIllinois v. Allen, 397 U.S. at 344.
[9] See id. at ¶ 45, citing Holbrook v. Flynn (1986), 475 U.S. 560,568-569, 106 S.Ct. 1340; accord State v. Johnson, 112 Ohio St.3d 210,2006-Ohio-6404, 858 N.E.2d 1144, at ¶ 242, citing State v. Adams,103 Ohio St.3d 508, at ¶ 106-110.
[10] State v. Franklin, 97 Ohio St.3d 1, 2002-Ohio-5304,776 N.E.2d 26, at ¶ 79-80; accord State v. Adams, 103 Ohio St.3d 508, at ¶ 104.
[11] See State v. Adams, 103 Ohio St.3d 508, at ¶ 104.
[12] See State v. Leonard, 157 Ohio App.3d 653, at ¶ 49, citingState v. Franklin, 97 Ohio St.3d 1, at ¶ 82.
[13] See id., citing State v. Franklin, 97 Ohio St.3d 1, at ¶ 82.
[14] See State v. Leonard, 157 Ohio App.3d 653, at ¶ 50.
[15] See State v. Gondor, 112 Ohio St.3d 377, 2006-Ohio-6679,860 N.E.2d 77, at ¶ 58.