OPINION. *Page 2 
{¶ 1} In one assignment of error, defendant-appellant Thomas Luckett appeals the judgment of the trial court convicting him of operating a motor vehicle while intoxicated. His sole argument is that the trial court erred when it denied his suppression motion concerning the stop of his vehicle. For the reasons set forth below, the contention lacks merit.
 Erratic Driving Leads to OVI Arrest {¶ 2} Lieutenant Russell Neville of the Cincinnati Police Department was driving on Glenway Avenue in a marked patrol car when he came upon a vehicle being operated by Luckett. According to Lieutenant Neville, Luckett's vehicle "was weaving to the degree that I was concerned about an auto accident or an injury. The weaving was minor and mild initially and then as he went further up Glenway he started weaving a little further right to the — he was in the curb lane right far enough I was concerned he was going to strike a telephone pole right near Western Hills High School baseball field." He also said that "I was concerned that he was going to [strike the curb.] He was weaving enough that he was to the far right of the right-hand lane and partially into the left-hand lane which would be the center lane and back and forth frequently." He testified that Luckett went to the right "more than once" and to the left "probably 2 or 3 times to the point that I felt concerned if I let him continue there was going to be an auto accident." On cross-examination, Lieutenant Neville admitted that Luckett did not actually leave his lane.
 {¶ 3} Police Officer Brad Smith, who had stopped his vehicle behind Lieutenant Neville, intervened shortly after the stop because Lieutenant Neville could not remain on the scene. During the traffic stop, Officer Smith developed *Page 3 
probable cause to believe that Luckett was intoxicated and charged him with two counts of driving under the influence,[1] as well as weaving in violation of Cincinnati Municipal Code ("CMC") 506-76.
 {¶ 4} Luckett filed a motion to suppress. After the evidentiary hearing, the trial court requested that the parties submit written arguments. After considering the submitted arguments, the trial court denied the motion to suppress. Luckett entered a plea of no contest to the two driving-under-the-influence charges[2] and to the weaving charge.[3] After the plea was accepted, the trial court convicted Luckett and sentenced him accordingly.
 Motion to Suppress {¶ 5} In his sole assignment of error, Luckett argues that his weaving within his lane did not justify the stop in this case. For this reason, he continues, his motion to suppress should have been granted. We cannot agree.
 {¶ 6} Appellate review of a motion to suppress presents a mixed question of law and fact.[4] At a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and to evaluate witness credibility.[5]
An appellate court must accept a trial court's factual findings so long as competent and credible evidence supports them.[6] A reviewing court then conducts a de novo review of the trial court's application of the law to the facts of the case.[7] *Page 4 
 {¶ 7} In general, warrantless searches and seizures "are per se unreasonable under the Fourth Amendment — subject only to a few specifically established and well-delineated exceptions."[8] InTerry v. Ohio, the United States Supreme Court ruled that one exception to the Fourth Amendment's warrant requirement allows a police officer to conduct a brief investigative stop if the officer possesses a reasonable suspicion, based upon specific facts that, when taken together with rational inferences from those facts, warrant the belief that criminal behavior has occurred or is imminent.[9] In other words, the officer must be able to articulate specific facts that would warrant a person of reasonable caution in the belief that the person stopped has committed, or is about to commit, a crime.[10] This court has determined that the standard is objective: would the facts available to the officer at the moment of the seizure have warranted an individual of reasonable caution in the belief that the action taken was appropriate?[11]
 Violation of City Ordinance Not Basis for Stop {¶ 8} The city argues that the stop was justified because Lieutenant Neville had observed what amounted to a violation of CMC 506-76. The city posits that "when a police officer witnesses a minor traffic violation, he may stop the vehicle for the purposes of issuing a traffic citation."
 {¶ 9} The problem with the city's argument is that Lieutenant Neville never mentioned a violation of CMC 506-76 as the reason for stopping Luckett. Therefore, Luckett was not stopped "for the purpose of issuing a traffic citation." *Page 5 
While he was eventually cited for violating that ordinance, the citation was issued by Officer Smith, who had not seen Luckett's driving.
 Findings of Trial Court Supported by Record {¶ 10} While the violation of the CMC 506-76 could not have justified the stop in this case, it was not the basis of the trial court's decision. The trial court found that "the defendant made an abrupt change to the right almost hitting a pole, and back to the left — his 2 left tires touching the lines — [illegible] and back to the right abruptly."
 {¶ 11} As we have indicated previously, a trial court's factual determinations are afforded great deference by this court.[12] The United States Supreme Court cautions that "a reviewing court should take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers."[13] "A finding is `clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."[14] Moreover, where the evidence would support several conclusions but the lower court has decided to weigh more heavily in one direction, "[s]uch a choice between * * * permissible views of the weight of evidence is not `clearly erroneous.'"[15]
 {¶ 12} Having reviewed the testimony of Lieutenant Neville as well as the video recording of Luckett's driving, we find no clear error in the factual findings *Page 6 
of the trial court. Because of the angle of the video recording, Luckett's driving pattern is not entirely clear. But Lieutenant Neville testified about what had occurred and the fears that had arisen in him based upon what he had observed. Based upon this record, we are not left with the definite and firm conviction that a mistake was committed in assessing the evidence. We therefore accept as true that Luckett drove in the manner described by the trial court.
 Weaving Constitutes Erratic Driving {¶ 13} Having determined that there is a basis in the record for the findings of historical fact made by the trial court, we must next determine whether the trial court properly applied the law to those facts. As we have previously stated, this review is de novo.
 {¶ 14} While we have rejected the city's argument that the stop in this case was justified by an observed traffic violation, this court has held that an officer's observation of either a traffic violation or erratic driving can justify the type of intrusion contemplated byTerry.[16] As the Eleventh Appellate District recently noted, "[significant weaving within one's lane can rise to the level of erratic driving and reasonable suspicion that the driver of the vehicle is impaired to justify a stop, even if there are no other traffic violations."[17] Other appellate districts have agreed.[18] *Page 7 
 {¶ 15} Clearly, not all instances of weaving within one's lane of travel will justify a traffic stop.[19] Modest weaving within one's lane, without more, is insufficient.[20] But that was not the type of weaving involved here.
 {¶ 16} In this case, Lieutenant Neville testified that the weaving was so significant that he was afraid that Luckett was going to cause an accident. The trial court found as a matter of historical fact that Luckett had almost hit a pole. Where weaving occurs to such an extent that the motorist creates a danger of an automobile accident, the weaving is sufficiently "significant" to constitute erratic driving.[21] Since the trial court concluded that Luckett had almost caused an accident, the weaving in this case constituted erratic driving. Lieutenant Neville had a reasonable suspicion that Luckett was impaired and was justified in stopping him to investigate further.
 {¶ 17} Accordingly, we overrule Luckett's assignment of error and affirm the trial court's judgment.
Judgment affirmed.
PAINTER, P.J. AND WINKLER, J., CONCUR.
RALPH WINKLER, retired, from the First Appellate District, sitting by assignment.
[1] R.C. 4511.19(A)(1)(a) and 4511.19(A)(1)(d).
[2] Id.
[3] Cincinnati Municipal Code 506-76.
[4] State v. Taylor, 1st Dist. No. C-070026, 2007-Ohio-7066, at ¶11.
[5] Id.; see, also, State v. Gunn, 1st Dist. No. C-070016,2007-Ohio-6874, at ¶ 6, citing State v. Williams (1993),86 Ohio App.3d 37, 41, 619 N.E.2d 1141.
[6] Taylor, supra, at ¶ 11, citing State v. Guysinger (1993),86 Ohio App.3d 592, 594, 621 N.E.2d 726.
[7] Id., citing Ornelas v. United States (1996), 517 U.S. 690,116 S.Ct. 1657; State v. Klein (1991), 73 Ohio App.3d 486, 488,597 N.E.2d 1141.
[8] Katz v. United States (1967), 389 U.S. 347, 357,88 S.Ct. 507.
[9] Terry v. Ohio (1968), 392 U.S. 1, 88 S.Ct. 1868; see, also,United States v. Brignoni-Ponce (1978), 422 U.S. 873, 95 S.Ct. 2574;State v. Andrews (1991), 57 Ohio St.3d 86, 565 N.E.2d 1271.
[10] Terry, supra, at 21-22.
[11] Id., citing State v. Black (Dec. 31, 1998), 1st Dist. No. C-970874.
[12] State v. Earhart, 1st Dist. No. C-030526, 2004-Ohio-4791, at ¶ 7, citing State v. Mills (1992), 62 Ohio St.3d 357, 366,582 N.E.2d 972.
[13] Ornelas, supra, at 699.
[14] United States v. United States Gypsum Co. (1947), 333 U.S. 364,395, 68 S.Ct. 525.
[15] United States v. Yellow Cab Co. (1949), 338 U.S. 338, 342,70 S.Ct. 177.
[16] State v. Lopez, 161 Ohio App.3d 337, 2006-Ohio-2091,850 N.E.2d 781, at ¶ 14, citing State v. Moore, 6th Dist. No. H-02-001, 2002-Ohio-4476, at ¶ 12; State v. Pence (July 29, 1996), 12th Dist. No. CA95-09-020. See, also, State v. Robinette, 80 Ohio St.3d 234, 239,1997-Ohio-343, 685 N.E.2d 762; State v. Evans, 67 Ohio St.3d 405, 407,1993-Ohio-186, 618 N.E.2d 162.
[17] Kirtland Hills v. Metz, 11th Dist. No. 2005-L-197,2006-Ohio-3413, at ¶ 12, citing State v. Weber, 11th Dist. No. 2003-L-090, 2004-Ohio-2444, at ¶ 15.
[18] See, e.g., State v. Hodge, 147 Ohio App.3d 550, 2002-Ohio-3053,771 N.E.2d 331, at ¶ 46 (holding that erratic driving alone was a sufficient basis for an articulable and reasonable suspicion); State v.Mays, 5th Dist. No. 2006-CA-00097, 2007-Ohio-2807, at ¶ 17 (same);State v. Flanagan (June 14, 2000), 9th Dist. No. 99CA0045 (holding that weaving within a lane can support an investigatory stop, even when such weaving itself is not illegal).
[19] See, e.g., State v. Brown, 11th Dist. No. 2006-T-0077,2007-Ohio-4626.
[20] Id.
[21] See State v. Riffle (Nov. 15, 1991), 4th Dist. No. 1698 (finding reasonable suspicion when the officer observed weaving over several blocks, and the defendant almost drove off the side of the road). *Page 1