OPINION
{¶ 1} This is an accelerated calendar case, submitted to this court on the record and the briefs of the parties. Appellant, the village of Kirtland Hills, appeals the judgment entered by the Willoughby Municipal Court. The trial court granted a motion to suppress filed by appellee, Rachel A. Metz.
 {¶ 2} On August 14, 2005, at 1:44 a.m., Officer Jeffery Bilicic was proceeding on the on-ramp entering Interstate 90 Eastbound. As he was merging into the right lane, he noticed a vehicle in the left lane. The vehicle changed lanes, moving from the left lane to the right lane in front of Officer Bilicic. However, the vehicle continued drifting to the right and crossed over the white fog line. Officer Bilicic testified that the vehicle was straddling the fog line, with half of the car in the right lane and the other half in the "break down" lane. The vehicle straddled the line for about two hundred feet, or three to four seconds, and, then, drifted back into the right lane. Officer Bilicic initiated a traffic stop.
 {¶ 3} The driver of the vehicle was Metz. Metz indicated she was tired and explained that she was "dozing off." Officer Bilicic inquired as to whether Metz had been drinking any alcohol, to which Metz replied that she had consumed two beers. Officer Bilicic administered several field sobriety tests, including the walk-and-turn test, the one-leg stand test, and the horizontal gaze nystagmus ("HGN") test. Metz passed the one-leg stand and walk-and-turn tests, but showed four of six clues for impairment on the HGN test. Officer Bilicic arrested Metz for operating a vehicle under the influence of alcohol ("OVI"), based on the totality of the circumstances, including the HGN test, Metz's driving, the time of day, and the fact that Metz was only eighteen years old, so her prohibited blood-alcohol content is lower than that of an adult over twenty-one years old.
 {¶ 4} Metz was charged with two counts of OVI and one count of continuous lanes of travel. Metz pled not guilty to these charges.
 {¶ 5} Metz filed a motion a motion to suppress all of the evidence relating to the stop of her vehicle. A hearing was held before a magistrate. Officer Bilicic testified for the village. Following the hearing, the magistrate recommended granting Metz's motion to suppress. The magistrate concluded that Metz could have been attempting to pull off into the break down lane, which is a legal activity, therefore, Officer Bilicic did not have probable cause that Metz committed a marked lane violation. The same day the magistrate issued his decision, the trial court issued a judgment entry adopting the magistrate's findings of fact and conclusions of law and granting Metz's motion to suppress. The village filed objections to the magistrate's decision. The trial court overruled the village's objections to the magistrate's decision.
 {¶ 6} The village timely filed a notice of appeal of the trial court judgment entry. We note the village was permitted to appeal the granting of a motion to suppress.[1] The village raises the following assignment of error:
 {¶ 7} "The trial court erred to the prejudice of the village in granting the motion to suppress filed by the defendant-appellee."
 {¶ 8} "Appellate review of a motion to suppress presents a mixed question of law and fact."[2] The appellate court must accept the trial court's factual findings, provided they are supported by competent, credible evidence.[3] Thereafter, the appellate court must independently determine whether those factual findings meet the requisite legal standard.[4]
 {¶ 9} There are several appellate decisions that hold a "de minimis" marked lane violation is not a ground for an officer to initiate a traffic stop.[5] However, for the reasons that follow, we hold that an officer may stop a motor vehicle after witnessing a traffic violation, including a marked lane violation.
 {¶ 10} Regarding "weaving" and marked lane violations, there are two legitimate bases for an officer to initiate a traffic stop. The first is that, pursuant to Terry v. Ohio, the officer has reasonable suspicion that a crime is occurring.[6] The second is that the officer has probable cause to believe that a traffic violation has occurred.[7] In many instances when a vehicle crosses the fog line, the officer could stop the vehicle based on probable cause that a traffic violation has occurred (a marked lane violation); and based on reasonable suspicion that the driver is operating the vehicle under the influence of alcohol. However, the stop does not violate the Fourth Amendment so long as the circumstances meet one of the above standards.
 {¶ 11} "The investigative stop exception to theFourth Amendment warrant requirement allows a police officer to stop an individual if the officer has a reasonable suspicion, based upon specific and articulable facts, that criminal behavior has occurred or is imminent."[8] This standard applies to individuals driving motor vehicles.[9] Finally, "[t]he propriety of an investigative stop by a police officer must be viewed in light of the totality of the surrounding circumstances."[10] These circumstances are to be "viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold."[11]
 {¶ 12} Sufficiently "erratic" driving is justification to support a Terry stop based on the officer's reasonable suspicion that the driver is operating the vehicle under the influence of alcohol.[12] Significant weaving within one's lane can rise to the level of erratic driving and reasonable suspicion that the driver of the vehicle is impaired to justify a stop, even if there are no other traffic violations.[13] On the other hand, a "de minimis" marked lane violation, standing alone, does not necessarily rise to the level of reasonable suspicion that the operator of the vehicle is impaired.[14]
 {¶ 13} However, the marked lane violation, standing alone, does constitute probable cause for the officer to stop the vehicle to investigate the lane violation itself. The Supreme Court of Ohio has held:
 {¶ 14} "Where a police officer stops a vehicle based on probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable under theFourth Amendment to the United States Constitution even if the officer had some ulterior motive for making the stop, such as a suspicion that the violator was engaged in more nefarious criminal activity."[15]
 {¶ 15} In interpreting Dayton v. Erickson, this court has held that when a police officer witnesses a minor traffic violation, he may stop the vehicle for the purposes of issuing a traffic citation.[16] Thereafter, the officer may investigate the driver of the vehicle for driving under the influence if the officer develops reasonable suspicion that the driver of the vehicle may be intoxicated.[17]
 {¶ 16} Metz was charged with violating Kirtland Hills Codified Ordinances 331.08, which is analogous to Ohio's marked lane statute, which provides:
 {¶ 17} "(A) Whenever any roadway has been divided into two or more clearly marked lanes for traffic, or wherever within municipal corporations traffic is lawfully moving in two or more substantially continuous lines in the same direction, the following rules apply:
 {¶ 18} "(1) A vehicle or trackless trolley shall be driven, as nearly as is practicable, entirely within a single lane or line of traffic and shall not be moved from such lane or line until the driver has first ascertained that such movement can be made with safety."[18]
 {¶ 19} Officer Bilicic had probable cause to stop Metz's vehicle for a violation of the marked lane statute. Metz's vehicle left its lane of travel. Officer Bilicic testified that there were no objects in the roadway that would have justified Metz driving to the right of the fog line.
 {¶ 20} The magistrate relied on this court's holding inState v. Worthy in support his decision to grant Metz's motion to suppress.[19] In Worthy, the driver on a four-lane road drifted out of the right lane and into the left lane, then returned to the right lane. In finding that no reasonable suspicion existed for the stop, this court held that the driver could have left his lane of travel and continued into the unoccupied left lane of travel, without committing a violation of the marked lane statute.[20] Essentially, this court held that changing lanes does not constitute a marked lane violation.
 {¶ 21} The case at bar is distinguishable from State v.Worthy for several reasons. First, State v. Worthy was based on State v. Spikes and other cases holding that a "de minimis" marked lane violation does not justify a traffic stop.[21]
As previously noted, we believe this line of cases is no longer controlling in light of the Supreme Court of Ohio's holding inDayton v. Erickson. Moreover, the driver in Worthy crossed into an unoccupied lane of travel, while Metz drove to the right of the fog line into the "break down" lane.
 {¶ 22} Metz argues that the "as nearly as practicable" language in the statute allows for discretion on the part of the driver as to when they must remain in their lane. We disagree. The Seventh District recently addressed this issue and noted:
 {¶ 23} "The legislature did not intend for a motorist to be punished when road debris or a parked vehicle makes it necessary to travel outside of the lane. Nor, we are quite certain, did the legislature intend this statute to punish a motorist for traveling outside of their lane to avoid striking a child or animal. We are equally certain the legislature did not intend the statute to give motorists the option of staying within the lane at their choosing. Common sense dictates the statute is designed to keep travelers, both in vehicles and pedestrians, safe. The logical conclusion is the legislature intended only special circumstances to be valid reasons to leave a lane, not mere inattentiveness or carelessness. To believe the statute was intended to allow motorists the option of when they will or will not abide by the lane requirement is simply not reasonable."[22]
 {¶ 24} We agree with the Seventh District's analysis. Essentially, the "as nearly as practicable" language is a defense to the statute. If a driver is stopped, he can explain to the officer that he went out of his lane because there was a (dog, child, hubcap, etc.) in the road. If the officer believes the story, he can let the driver proceed without issuing a citation. If not, the driver can challenge the citation in court. However, even when there is a legitimate reason for a driver to stray from his lane, it does not eliminate the officer's authority to effectuate a stop, especially when the officer is unaware of that reason.
 {¶ 25} Finally, we note the reasons Metz gave Officer Bilicic for leaving her lane, that she was tired and "dozing off." As stated by the Seventh District, inattentiveness is not a justification for leaving one's lane of travel.[23]
 {¶ 26} Officer Bilicic had sufficient probable cause that Metz committed a marked lane violation to effectuate a traffic stop for the purposes of issuing her a citation.
 {¶ 27} We are reversing the trial court's decision regarding the stop of Metz's vehicle. Upon remand, the trial court is to rule on the remaining issues raised in Metz's motion to suppress.
 {¶ 28} The village's assignment of error has merit.
 {¶ 29} The judgment of the trial court is reversed. This matter is remanded for further proceedings consistent with this opinion.
Donald R. Ford, P.J., Cynthia Westcott Rice, J., concur.
[1] R.C. 2945.67(A).
[2] State v. Burnside, 100 Ohio St.3d 152, 2003-Ohio-5372, at ¶ 8.
[3] Id., citing State v. Fanning (1982), 1 Ohio St.3d 19.
[4] Id., citing State v. McNamara (1997),124 Ohio App.3d 706.
[5] See cases cited in State v. Haley (Mar. 16, 2001), 11th Dist. No. 2000-P-0021, 2001 Ohio App. LEXIS 1242, at *4-5.
[6] Terry v. Ohio (1968), 392 U.S. 1, 21. See, also, Statev. Jordan, 104 Ohio St.3d 21, 2004-Ohio-6085, at ¶ 35.
[7] Dayton v. Erickson (1996), 76 Ohio St.3d 3, syllabus.
[8] State v. Gedeon (1992), 81 Ohio App.3d 617, 618, citingTerry v. Ohio, supra.
[9] Id., citing State v. Heinrichs (1988),46 Ohio App.3d 63.
[10] State v. Bobo (1988), 37 Ohio St.3d 177, paragraph one of the syllabus.
[11] State v. Andrews (1991), 57 Ohio St.3d 86, 87-88.
[12] Mentor v. Phillips (Dec. 29, 2000), 11th Dist. No. 99-L-119, 2000 Ohio App. LEXIS 6207, at *6, quoting State v.Spikes (June 9, 1995), 11th Dist. No. 94-L-187, 1995 Ohio App. LEXIS 2649.
[13] See State v. Weber, 11th Dist. No. 2003-L-090,2004-Ohio-2444, at ¶ 15.
[14] See, e.g., State v. Haley, supra, at *4-5.
[15] Dayton v. Erickson, 76 Ohio St.3d 3, syllabus. See, also, e.g., Whren v. United States (1996), 517 U.S. 806,812-813.
[16] State v. Jennings (Mar. 3, 2000), 11th Dist. No. 98-T-0196, 2000 Ohio App. LEXIS 800, at *8-9, quoting State v.Yemma (Aug. 9, 1996), 11th Dist. No. 95-P-0156, 1996 Ohio App. LEXIS 3361, at *6-7. See, also, Eastlake v. Reithmann, 11th Dist. Nos. 2003-L-076 and 2003-L-079, 2005-Ohio-137, at ¶ 25.
[17] Id.
[18] R.C. 4511.33.
[19] State v. Worthy (Dec. 1, 2000), 11th Dist. No. 99-L-063, 2000 Ohio App. LEXIS 5612.
[20] Id. at *4.
[21] (Secondary citations omitted.) Id. at *3-4, citing Statev. Spikes, supra.
[22] (Emphasis in original.) State v. Hodge,147 Ohio App.3d 550, 2002-Ohio-3053, at ¶ 43.
[23] Id.