OPINION
{¶ 1} Appellant, Shawn M. Gray, appeals the judgment entered by the Lake County Court of Common Pleas. The trial court sentenced Gray to a two-year prison term for his convictions for possession of cocaine and operating a vehicle under the influence of alcohol or drugs ("OVI").
 {¶ 2} In the early morning hours of March 20, 2006, Sergeant Shawn Parker of the Kirtland Hills Police Department had stopped a vehicle on the westbound lanes of *Page 2 
Interstate 90. Officer Jeffrey Bilicic of the Kirtland Hills Police Department was assisting Sergeant Parker with the traffic stop on the side of the road. The traffic on Interstate 90 was very light at the time of the stop. However, at one point, a vehicle traveled by the scene of the stop in the right lane, without changing to the left lane, even though that lane was unoccupied.
 {¶ 3} Officer Bilicic left the scene of the traffic stop and pursued the vehicle that drove by. During his pursuit, Officer Bilicic noticed that the vehicle crossed over the solid white line designating the right edge of the right lane. Officer Bilicic then initiated a traffic stop of the vehicle. At trial, Officer Bilicic identified the driver of the vehicle as Gray. In addition to Gray, there was a passenger in the front seat later identified as Matthew Bovitt, who is Gray's cousin.
 {¶ 4} After approaching Gray's vehicle and speaking to him briefly, Officer Bilicic noticed a strong odor of an alcoholic beverage coming from inside the vehicle. Officer Bilicic also observed Gray's eyes to be glassy and bloodshot. Finally, he described Gray's speech as slow and "mumbled." Based on Officer Bilicic's observations, he administered field sobriety tests on Gray, including the horizontal gaze nystagmus ("HGN"), the walk-and-turn, and the one-leg stand. Officer Bilicic observed all six clues from the HGN test. During the walk-and-turn test, Gray lifted his hands more than six inches from his waist, did not count his steps out loud, and stepped to the side for balance. During the one-leg-stand test, Gray placed his foot down three times, stepped to the side for balance, and raised his hands more than six inches from his sides. Officer Bilicic placed Gray under arrest for OVI. *Page 3 
 {¶ 5} When Officer Bilicic initially approached the vehicle, he asked for Bovitt's identification. Bovitt appeared as though he had been sleeping prior to the stop. Bovitt provided Officer Bilicic his identification. Then, Bovitt placed his wallet on his lap and appeared to fall back to sleep. After Officer Bilicic placed Gray under arrest, he returned to Gray's vehicle and woke up Bovitt. When Bovitt exited the vehicle, his wallet fell to the ground. Bovitt also appeared to be intoxicated, and a check of the statewide computer system indicated that he had a suspended operator's license. Since neither Gray nor Bovitt could legally drive the vehicle, Officer Bilicic ordered the vehicle to be towed.
 {¶ 6} Prior to the tow truck arriving, Officer Bilicic searched Gray's vehicle. During the search of the vehicle, Officer Bilicic found a bag of suspected cocaine in front of the center console on the driver's side, near the gas pedal. The bag contained three smaller bags inside it. Subsequent laboratory testing confirmed the white substance in the bags was cocaine, with a total weight of 40.77 grams.
 {¶ 7} Gray was indicted on three counts, including: trafficking in cocaine, in violation of R.C. 2925.03(A)(2), a third-degree felony; possession of cocaine, in violation of R.C. 2925.11, a third-degree felony; and operating a vehicle under the influence of alcohol, a drug of abuse, or a combination of them, in violation of R.C. 4511.19(A)(1)(a), a first-degree misdemeanor. Gray pled not guilty to these charges.
 {¶ 8} Gray filed several pretrial motions, including a motion to suppress evidence resulting from the stop of his vehicle. One basis for this motion was his assertion that "[t]here was no reasonable and articulable cause to stop" him. The state *Page 4 
filed a brief in opposition to Gray's motion to suppress. A hearing was held on Gray's motion. Following the hearing, the trial court denied Gray's motion to suppress.
 {¶ 9} The matter proceeded to a jury trial. The state presented several witnesses, including Officer Bilicic. Following the state's case in chief, Gray moved for acquittal pursuant to Crim. R. 29. The trial court overruled Gray's motion. Gray called Officer James Simone from the Cleveland Police Department and Attorney Kenneth Bossin as expert witnesses for his defense. The jury found Gray not guilty of trafficking in cocaine. The jury found Gray guilty of possession of cocaine and the OVI charge.
 {¶ 10} The trial court sentenced Gray to a two-year prison term for his conviction for possession of cocaine. In addition, the trial court sentenced Gray to a 180-day term for his conviction for OVI. The trial court ordered these sentences to be served concurrently. Thus, Gray's aggregate prison term is two years.
 {¶ 11} Gray has timely appealed the trial court's judgment to this court. In his initial appellate brief, Gray raised four assignments of error. Thereafter, he filed a motion to submit a supplemental assignment of error, which was granted by this court. His first assignment of error is:
 {¶ 12} "The trial court erred in denying the Motion to Suppress as the stop of appellant violated the Fourth and Fourteenth Amendments of the federal Constitution."
 {¶ 13} Gray argues that the trial court should have suppressed the evidence resulting from the stop of his vehicle because Officer Bilicic did not have reasonable suspicion to initiate the traffic stop. At the suppression hearing, Officer Bilicic testified he stopped Gray's vehicle as a result of witnessing two traffic infractions: (1) failing to change lanes upon approaching his and Sergeant Parker's vehicles, in violation of *Page 5 
R.C. 4511.213(A)(1), and (2) crossing the white edge line, in violation of R.C. 4511.33(A). On appeal, Gray only contests Officer Bilicic's stop on the basis of his vehicle crossing the white line. Thus, we will limit our analysis to this issue.
 {¶ 14} "Appellate review of a motion to suppress presents a mixed question of law and fact." State v. Burnside, 100 Ohio St.3d 152,2003-Ohio-5372, at ¶ 8. The appellate court must accept the trial court's factual findings, provided they are supported by competent, credible evidence. Id., citing State v. Fanning (1982), 1 Ohio St.3d 19. Thereafter, the appellate court must independently determine whether those factual findings meet the requisite legal standard. Id., citingState v. McNamara (1997), 124 Ohio App.3d 706.
 {¶ 15} Gray cites State v. Haley (Mar. 16, 2001), 11th Dist. No. 2000-P-0021, 2001 Ohio App. LEXIS 1242, in support of his argument. InHaley, this court held that "a de minimis marked lane violation, without other evidence of impairment, does not justify an investigative stop." Id. at *4. (Citations omitted.) However, following the State v.Haley decision, this court has expounded the difference between probable cause and reasonable suspicion in the context of a marked-lane violation. Kirtland Hills v. Metz, 11th Dist. No. 2005-L-197,2006-Ohio-3413, at ¶ 9-26.
 {¶ 16} In Metz, this court noted that while a de minimis marked-lane violation, standing alone, may not constitute sufficient reasonable suspicion that the driver is impaired, such violation does provide the officer with probable cause to make a traffic stop. Id. at ¶ 12-13. This court's decision in Metz was based on the Supreme Court of Ohio's decision in Dayton v. Erickson, where the court held: *Page 6 
 {¶ 17} "Where a police officer stops a vehicle based on probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable under the Fourth Amendment to the United States Constitution even if the officer had some ulterior motive for making the stop, such as a suspicion that the violator was engaged in more nefarious criminal activity." Dayton v. Erickson (1996),76 Ohio St.3d 3, syllabus.
 {¶ 18} "In interpreting Dayton v. Erickson, this court has held that when a police officer witnesses a minor traffic violation, he may stop the vehicle for the purposes of issuing a traffic citation. * * * Thereafter, the officer may investigate the driver of the vehicle for [OVI] if the officer develops reasonable suspicion that the driver of the vehicle may be intoxicated. * * *." Kirtland Hills v. Metz,2006-Ohio-3413, at ¶ 15. (Internal citations omitted.)
 {¶ 19} We note the facts of the case sub judice are strikingly similar to those in Kirtland Hills v. Metz. In both cases, the driver crossed the white edge line on Interstate 90. See Kirtland Hills v. Metz, at ¶ 2. When the vehicles left their lanes of travel, Officer Bilicic had probable cause to stop the vehicles for violations of the marked-lane statute. Thereafter, based on the lane violations, Officer Bilicic stopped the drivers and subsequently developed reasonable suspicion that the drivers may be intoxicated. Id. at ¶ 3.
 {¶ 20} In this matter, Officer Bilicic had probable cause to stop Gray's vehicle based on the traffic violations he observed. Therefore, the trial court did not err in denying Gray's motion to suppress.
 {¶ 21} Gray's first assignment of error is without merit.
 {¶ 22} Gray's second assignment of error is: *Page 7 
 {¶ 23} "The appellant was denied his right to present a defense under the Sixth and Fourteenth Amendments of the federal Constitution."
 {¶ 24} Gray argues that the trial court did not permit him to fully present two of his witnesses, Officer James Simone and Attorney Kenneth Bossin.
 {¶ 25} "The admission of evidence lies within the broad discretion of a trial court, and a reviewing court should not disturb evidentiary decisions in the absence of an abuse of discretion that has created material prejudice." State v. Noling, 98 Ohio St.3d 44, 2002-Ohio-7044, ¶ 43, citing State v. Issa (2001), 93 Ohio St.3d 49, 64. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." State v. Adams (1980), 62 Ohio St.2d 151, 157. (Citations omitted.)
 {¶ 26} Officer Simone is a police officer with the city of Cleveland. Gray called him as a witness to refute Officer Bilicic's testimony.
 {¶ 27} The first point to which Gray sought to have Officer Simone testify was the proper administration of field sobriety tests. However, Officer Simone testified that he has not been certified according to the National Highway Transportation Safety Administration ("NHTSA") manual and that the Cleveland Police Department's tests are not the same as the NHTSA manual. Since Officer Simone was not familiar with the NHTSA procedures, he could not testify as an expert to the field sobriety tests contained in the NHTSA manual. See Evid. R. 702(B). Thus, the trial court did not abuse its discretion by sustaining the state's objections to this line of questioning.
 {¶ 28} The next topic for which Gray sought to elicit testimony from Officer Simone was the use of dashboard video cameras in police cars. However, Officer *Page 8 
Simone testified that the Cleveland Police Department does not have a policy for dashboard cameras and that the camera he uses in his police cruiser is his personal camera. Since Officer Simone testified that he works for a police department without a policy for dashboard video cameras, he could not testify as an expert regarding the proper procedures for such cameras. See Evid. R. 702. The trial court did not abuse its discretion by precluding this testimony.
 {¶ 29} Next, Gray sought to have Officer Simone testify to the fact that an officer is not able to determine the speed of a vehicle coming straight at him. The trial court sustained the state's objection to this line of questioning, following Officer Simone's statement that he was not trained to determine the speed of a vehicle coming directly at him. Specifically, the court sustained an objection to the testimony "[y]ou can't judge speed with the naked eye, that's why you have radar." The trial court should have permitted this testimony. While Officer Simone testified he did not have training in judging the speed of an oncoming vehicle, this was due to the fact that he testified it was not possible to determine the speed of a vehicle with a "naked eye." Accordingly, it would have been impossible for him to have such training.
 {¶ 30} While the trial court erred in excluding this evidence, we conclude this error is harmless beyond a reasonable doubt. Crim. R. 52(A). There was no evidence presented suggesting that Gray was exceeding the speed limit. Thus, the only point of the case that Gray's speed would have been a factor is whether he slowed down when approaching Officer Bilicic's and Sergeant Parker's vehicles on the side of the road. However, we note that Officer Bilicic testified that Gray's vehicle crossed the white edge line. This action independently provided Officer Bilicic probable cause to stop Gray's *Page 9 
vehicle. See Kirtland Hills v. Metz, supra. The speed of Gray's vehicle was not a determinative factor going to the elements of the offenses of possession of cocaine or OVI.
 {¶ 31} The second witness Gray called was Attorney Bossin. Upon Gray's laying a proper foundation, the trial court declared Attorney Bossin an expert witness in relation to field sobriety tests.
 {¶ 32} Gray asserts the trial court did not let him present the expert testimony regarding the field sobriety tests. Attorney Bossin's testimony comprises 30 pages of the trial transcript, and he was permitted to testify regarding the administration of field sobriety tests. On appeal, Gray does not point to specific instances where his witness was not permitted to testify about whether the tests were properly administered. Moreover, while many of the state's objections were sustained, we note that the reason for some of the objections went to the form of the question, rather than the content. For example, the trial court sustained some of the objections because leading questions were used by defense counsel. Another objection was sustained regarding a question that asked Attorney Bossin what Officer Bilicic did in the video. The trial court ruled that the jury had seen the video and that they could make their own conclusions based on the video.
 {¶ 33} The trial court did not abuse its discretion in relation to the evidentiary rulings it made during Attorney Bossin's testimony regarding the administration of the field sobriety tests. *Page 10 
 {¶ 34} Also, Gray contends the trial court prohibited Attorney Bossin from testifying as to what version of the NHTSA manual should be used for administering the field sobriety tests. The following colloquy occurred at trial:
 {¶ 35} "Q. (By Mr. Carlin [defense counsel]): What manual should you use when you're administering field sobriety tests?
 {¶ 36} "MR. DIPIERRO [assistant prosecutor]: Objection.
 {¶ 37} "THE COURT: Overruled.
 {¶ 38} "A. [Attorney Bossin]: The state of Ohio its statute says that the officer should use the current manual at the time that he is administering the test.
 {¶ 39} "MR. DIPIERRO: Motion to strike as to the law. He said the statute.
 {¶ 40} "THE COURT: I'll overrule it, but I will instruct on the appropriate law that is applicable to this case as opposed to counsel.
 {¶ 41} "Q. Was that done in this case?
 {¶ 42} "A. No.
 {¶ 43} "MR. DIPIERRO: Objection.
 {¶ 44} "THE COURT: Sustained."
 {¶ 45} Provided defense counsel had been able to lay a proper foundation as to Attorney Bossin's knowledge of the topic, the trial court should have permitted his testimony regarding whether Officer Bilicic used the current version of the NHTSA manual. However, we conclude the trial court did not err in relation to this particular question and answer because there was, in fact, no proper foundation established. However, even if it was error to exclude this answer, it is harmless beyond a reasonable doubt. Crim. R. 52(A). Later in Attorney Bossin's testimony, he states that the NHTSA *Page 11 
manual changed in 2004 regarding the administration of the HGN test. Further, Attorney Bossin reviewed State's Exhibits 7(A)-(I), which are copies of Officer Bilicic's certificates of training. Attorney Bossin testified that he did not see that Officer Bilicic had received any training in the administration of field sobriety tests after 2003. The following colloquy occurred regarding this issue:
 {¶ 46} "Q. [By defense counsel]: So what you're — is it a fair statement that in March of 2006 [Officer Bilicic] was not trained regarding the current manual * * *
 {¶ 47} "A. [Attorney Bossin]: Yes. If his training was prior to 2004 he would not have been trained to look for distinct and sustained."
 {¶ 48} Therefore, Gray was able to get Attorney Bossin's testimony before the jury that Officer Bilicic may not have administered the field sobriety tests according to the current NHTSA manual.
 {¶ 49} Gray's second assignment of error is without merit.
 {¶ 50} Gray's third assignment of error is:
 {¶ 51} "There is insufficient evidence to convict the appellant of possession of cocaine."
 {¶ 52} A trial court shall grant a motion for acquittal when there is insufficient evidence to sustain a conviction. Crim. R. 29(A). When determining whether there is sufficient evidence presented to sustain a conviction, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus, following Jackson v. Virginia
(1979), 443 U.S. 307. *Page 12 
 {¶ 53} Gray argues the state did not provide sufficient evidence to support his conviction for possession of cocaine. He does not challenge the sufficiency of the evidence presented pertaining to his OVI conviction.
 {¶ 54} "Possession of drugs can be either actual or constructive."State v. Rollins, 3d Dist. No. 11-05-08, 2006-Ohio-1879, at ¶ 22, citingState v. Haynes (1971), 25 Ohio St.2d 264. Even if the contraband is not in a suspect's "immediate physical possession," the suspect may still constructively possess the item, so long as the evidence demonstrates that he "was able to exercise dominion and control over the controlled substance." State v. Lee, 11th Dist. No. 2002-T-0168, 2004-Ohio-6954, at ¶ 41, citing State v. Wolery (1976), 46 Ohio St.2d 316, 329. To prove constructive possession, "[i]t must also be shown that the [defendant] was conscious of the presence of the object." State v. Hankerson (1982),70 Ohio St.2d 87, 91.
 {¶ 55} The Supreme Court of Ohio has held that "`circumstantial evidence and direct evidence inherently possess the same probative value and therefore should be subjected to the same standard of proof.'"State v. Biros (1997), 78 Ohio St.3d 426, 447, quoting State v.Jenks, 61 Ohio St.3d 259, paragraph one of the syllabus. The Third Appellate District has held that constructive possession of contraband may be supported solely by circumstantial evidence. State v.Rollins, 2006-Ohio-1879, at ¶ 22, citing State v. Jenks,61 Ohio St.3d at 272-273.
 {¶ 56} Gray cites the Eighth Appellate District's opinion in State v.Pruitt (1984), 18 Ohio App.3d 50 in support of his argument. InPruitt, the court held "mere proof of presence in the vicinity of illicit drugs is not enough to prove that element." Id. at 58. (Citations omitted.) We agree with this statement as a general proposition of law. As *Page 13 
noted above, the state must also prove Gray was conscious of the presence of the cocaine and was able to exercise dominion and control over the item.
 {¶ 57} The cocaine was found in a vehicle owned by Gray, which Gray was driving on the night in question. These facts support a finding that Gray was in constructive possession of the cocaine. See State v.Minniefield, 11th Dist. No. 2006-L-044, 2006-Ohio-6345, at ¶ 23.
 {¶ 58} Officer Bilicic explained exactly where he found the bag of cocaine in Gray's vehicle:
 {¶ 59} "Um, there's a center console in the vehicle that runs, um, between the driver's seat and the passenger seat and it runs all the way up to underneath the dashboard, uh, and it ends pretty much where the gas pedal is. Right by the gas pedal there's a bit of a void, it's actually just right across from the gas pedal, there's a void that actually goes behind the center console a little bit, that plastic bag was sticking out from there."
 {¶ 60} The fact that the cocaine was located near the gas pedal on the driver's side supports a finding that Gray constructively possessed the cocaine. "`[I]t is reasonable to infer that a defendant knowingly possesses cocaine when he is shown to have had dominion and control over a bag of cocaine which was next to his seat in a car.'" Id., quotingState v. Davis (Sept. 24, 1998), 10th Dist. No. 98AP-192, 1998 Ohio App. LEXIS 4455, at *8.
 {¶ 61} The state presented evidence that, when viewed in a light most favorable to the state, is sufficient for a trier of fact to conclude that Gray possessed the cocaine beyond a reasonable doubt. *Page 14 
 {¶ 62} Gray's third assignment of error is without merit.
 {¶ 63} Gray's fourth assignment of error is:
 {¶ 64} "The conviction for possession of cocaine is against the manifest weight of the evidence."
 {¶ 65} In determining whether a verdict is against the manifest weight of the evidence, the Supreme Court of Ohio has adopted the following language as a guide:
 {¶ 66} "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" State v. Thompkins (1997), 78 Ohio St.3d 380, 387. (Citations omitted.)
 {¶ 67} Gray argues that his conviction is against the manifest weight of the evidence. His primary argument is that Bovitt had equal access to the area where the cocaine was found and that Bovitt could have placed the cocaine there when Officer Bilicic was conducting the field sobriety tests on Gray.
 {¶ 68} A similar argument was made in State v. Minniefield, where the appellant argued that crack cocaine found on the driver's side of a vehicle he was driving could have belonged to his intoxicated passenger.State v. Minniefield, 2006-Ohio-6345, at ¶ 32. This court rejected that contention as raised in a manifest weight of the evidence argument. Id. at ¶ 34-35. At trial, Gray presented no evidence that the cocaine belonged to anyone else. See, e.g., State v. Minniefield,2006-Ohio-6345, at ¶ 32. *Page 15 
 {¶ 69} In the case sub judice, the cocaine was found when Officer Gray was searching the driver's side of the vehicle, near the gas pedal. The fact the cocaine was found on the driver's side of the vehicle supports the conclusion that it belonged to the driver, rather than the passenger. Id. at ¶ 32. Further, Officer Bilicic testified that Bovitt appeared intoxicated and was asleep when the vehicle was stopped. Then, at the conclusion of Gray's field sobriety tests, Officer Bilicic had to wake Bovitt again. This evidence casts doubt on Gray's theory that Bovitt "planted" the drugs.
 {¶ 70} Finally, we note that Officer Bilicic testified, on cross-examination, that Bovitt told him the cocaine was Gray's.
 {¶ 71} In light of the foregoing, the jury did not lose its way or create a manifest miscarriage of justice by finding Gray guilty of possession of cocaine.
 {¶ 72} Gray's fourth assignment of error is without merit.
 {¶ 73} Gray's supplemental assignment of error is:
 {¶ 74} "The appellant's right to confront and cross examine witnesses against him as guaranteed under the Sixth and Fourteenth Amendments of the federal Constitution was violated when the state was allowed to play the video of the unindicted co-defendant's statement to the jury and otherwise admit evidence with co-defendant's name without calling him as a witness."
 {¶ 75} Contrary to the assertion suggested in Gray's supplemental assignment of error, none of Bovitt's statements during the booking process were played for the jury. The record conclusively demonstrates that the videotape was stopped following Gray's interview with Officer Bilicic at the police station. *Page 16 
 {¶ 76} The Sixth Amendment to the United States Constitution affords criminal defendants the right to confront adverse witnesses. State v.Stahl, 111 Ohio St.3d 186, 2006-Ohio-5482, at ¶ 13. The United States Supreme Court addressed the Confrontation Clause issue in Crawford v.Washington (2004), 541 U.S. 36. Subsequent to the Crawford decision, the initial inquiry now concerns whether the hearsay statement is "testimonial." State v. Stahl, 2006-Ohio-5482, at ¶ 16, quotingCrawford v. Washington, 541 U.S. at 68.
 {¶ 77} The Crawford Court declined to adopt a formal definition of "testimonial." State v. Stahl, 2006-Ohio-5482, at ¶ 19. However, the Supreme Court of Ohio noted that the Crawford Court did provide three examples of a testimonial statement, including: (1) ex parte, in-court testimony or its functional equivalent, including affidavits; (2) statements contained in formal testimonial materials, including depositions and affidavits; and (3) statements made where an objective declarant would reasonably believe the statement would be available to be used at a subsequent trial. (Secondary citations omitted.) Id., quoting Crawford v. Washington, 541 U.S. at 51-52.
 {¶ 78} In the argument portion of his supplemental brief, Gray cites two different instances where he asserts a Confrontation Clause violation occurred. First, he contends the trial court erred by admitting exhibits containing Bovitt's name. Some of the state's exhibits contained Bovitt's name, including the booking videotape, State's Exhibit 3; the laboratory report identifying the powder as cocaine, State's Exhibit 22; and the laboratory report indicating no fingerprints were found on the bag, State's Exhibit 26. The trial court noted that Gray did not object to these exhibits when they were introduced, only when the state moved to admit them. Gray's argument at trial was that *Page 17 
defense counsel expected the state to call Bovitt as a witness, as he was on the state's witness list. The trial court correctly noted that the state is not required to call an individual as a witness simply because that person's name appears on the witness list. Crim. R. 16(C)(3) provides: "[t]he fact that a witness' name is on a list furnished under subsection (C)(1)(c), and that the witness is not called shall not be commented upon at the trial."
 {¶ 79} Further, the fact that Bovitt's name appeared on certain exhibits does not make those exhibits "testimonial" in regard to the inclusion of Bovitt's name. The assistant prosecutor explained that Bovitt's name was only included on these exhibits for identification purposes. Bovitt was in Gray's vehicle at the time the cocaine was found and was initially considered a co-suspect. The inclusion of Bovitt's name is not a testimonial statement pursuant to the definition set forth in State v. Stahl, supra.
 {¶ 80} Gray also asserts that his Confrontation Clause rights were violated when Officer Bilicic testified as to what Bovitt told him during the police interrogation. Officer Bilicic testified that Bovitt initially told him he did not know who the cocaine belonged to, but later stated that the cocaine belonged to Gray.
 {¶ 81} Since the statements at issue were a result of police interrogation, the "primary-purpose test," as opposed to the "objective-witness test" set forth in State v. Stahl, applies to determine whether these statements were testimonial. State v.Siler, 116 Ohio St.3d 39, 2007-Ohio-5637, at ¶ 28. The primary-purpose test is:
 {¶ 82} "`Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are *Page 18 
testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.'" State v. Siler, supra, at paragraph one of the syllabus, quoting Davis v. Washington (2006), 547 U.S. 813, 822.
 {¶ 83} In this matter, there was no ongoing emergency at the time of Officer Bilicic's interview of Bovitt. Instead, the primary purpose of the interrogation was to establish facts that would be potentially useful in a subsequent criminal prosecution. Accordingly, Bovitt's statements were testimonial. However, our inquiry does not end here. It is critical to note how Bovitt's statements were elicited at trial. The following colloquy occurred during the cross-examination of Officer Bilicic:
 {¶ 84} "Q. [By defense counsel]: The booking tape, State's Exhibit 3, that the Prosecutor just stopped, that's not the end of that booking tape, right?
 {¶ 85} "A. No, it's not.
 {¶ 86} "Q. And you brought in Matthew Bovitt right after that, right?
 {¶ 87} "A. Yes.
 {¶ 88} "Q. And you sat him down, right?
 {¶ 89} "A. Yes.
 {¶ 90} "Q. And you went through who's cocaine is it, right?
 {¶ 91} "A. Yes.
 {¶ 92} "Q. Okay. And he said I don't know.
 {¶ 93} "A. Correct.
 {¶ 94} "Q. Okay. But in your report you say he told you he knows it was Shawn Gray's, correct? *Page 19 
 {¶ 95} "A. Correct."
 {¶ 96} Thus, the statements were introduced during the cross-examination of Officer Bilicic by defense counsel. They were not introduced by the state.
 {¶ 97} "Under the invited-error doctrine, `(a) party will not be permitted to take advantage of an error which he himself invited or induced.'" State v. Bey (1999), 85 Ohio St.3d 487, 493. (Citations omitted.)
 {¶ 98} Any error that occurred in this case was obviously the result of Gray's actions. Accordingly, under the invited-error doctrine, he is not permitted to take advantage of the perceived error at this time.
 {¶ 99} Gray's supplemental assignment of error is without merit.
 {¶ 100} The judgment of the trial court is affirmed.
CYNTHIA WESTCOTT RICE, J., concurs
 COLLEEN MARY OTOOLE, J., dissents. *Page 1