[Cite as *State v. Obermiller*, 2019-Ohio-1234.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

## JOURNAL ENTRY AND OPINION
## No. 101456

---

### STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

### DENNY OBERMILLER

DEFENDANT-APPELLANT

---

### JUDGMENT:
AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case Nos. CR-10-541010-A and CR-10-542119-A

**BEFORE:** Blackmon, P.J., Laster Mays, J., and Jones, J.

**RELEASED AND JOURNALIZED:** April 4, 2019

**ATTORNEYS FOR APPELLANT**

Timothy Young
Ohio Public Defender

Shawn P. Welch
Randall Porter
Melissa Jackson
Assistant State Public Defenders
250 East Broad Street, Suite 1400
Columbus, Ohio 43215


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor

Christopher D. Schroeder
Saleh Awadallah
Assistant County Prosecutors
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113


PATRICIA ANN BLACKMON, P.J.:

{¶1} Defendant-appellant, Denny Obermiller ("Obermiller"), appeals from the denial of his petition to vacate his capital murder convictions and other offenses. He assigns the errors designated in the appendix for our review.

{¶2} Having reviewed the record and pertinent law, we affirm the decision of the trial court. The apposite facts follow.

{¶3} Following the rape and murder of Obermiller's grandmother, Candace Schneider ("Candace"), and the murder of Obermiller's grandfather, Donald Schneider ("Donald"), Obermiller was indicted for seven counts of aggravated murder, three counts of theft, two counts

of kidnapping, two counts of aggravated robbery, and one count each of rape, aggravated burglary, tampering with evidence, attempted aggravated arson, and burglary, as well as notices of prior convictions and repeat offender specifications. On January 11, 2011, Obermiller appeared before a three-judge panel and waived his right to a jury trial. He pled guilty to the entire indictment, except the notices of prior convictions and repeat offender specifications, which the state then dismissed. During a hearing pursuant to R.C. 2945.06, the evidence established:

> Shortly before noon on Tuesday, August 10, 2010, Officer Michael Gazer was dispatched to the Schneiders' house in Maple Heights, Ohio, in response to a theft complaint. Donald and Candace told Gazer that they suspected Obermiller of stealing rare coins from their home.

> * * * Candace Flagg, one of the Schneiders' granddaughters, * * *
> contacted her cousin, Obermiller, who told her that he would try to check on the Schneiders and get back to her. Obermiller did not call her that evening.

> The next day, Flagg called Obermiller again. Obermiller initially told her that he had not yet stopped by the Schneiders' house. But when Flagg said that she was going to ask some friends to check on the Schneiders, Obermiller changed his story and told her that their grandparents were fine and that he had checked on them. After calling several other people, Flagg contacted the Maple Heights Police Department and requested that an officer stop by her grandparents' house. Flagg was subsequently informed that an officer had driven past the house and had seen Donald's van parked in the driveway.

> [On August 14, 2010,] officers looked through a partially open window, saw a body lying on the floor, forced their way in through the side door, and smelled a strong odor of natural gas. A candle was burning on the mantle in the living room, and the unlit gas stove in the kitchen had been left on with the burners exposed. One of the officers threw the candle out the door and turned off the gas stove.

> Officers found Candace's body in the first-floor bedroom. She was lying on her back on the floor with her arms above her head and her wrists handcuffed together. A power cord was wrapped around her neck, and a bed sheet partly covered her torso and completely covered her face. Police recovered condom wrappers and two used condoms in the same bedroom.

Officers found Donald's body on the bed in the second-floor bedroom. He was wearing only underwear and was lying on his right side with his feet at the head of the bed.   * * *.

An investigator observed that a television set was missing from above the mantle in the living room, as indicated by a dust outline and hanging cables.   Flagg testified at the hearing that her grandparents owned a large, flat-screen television set, which they had mounted above the mantle in the living room.   * * *

Subsequent forensic testing of vaginal swabs, performed by an analyst with the DNA department of the Cuyahoga County Coroner's Office, confirmed the presence of seminal material containing DNA that matched Obermiller's DNA profile as a major contributor to a reasonable degree of scientific certainty. Obermiller also could not be excluded as the source of epithelial cells found in the two used condoms.

Deputy Medical Examiner Joseph Felo, D.O., conducted Donald's autopsy and concluded that the cause of Donald's death was the same as Candace's: "asphyxia by cervical compression (ligature strangulation")."   * * *

After the evidentiary hearing, the panel found him guilty of all counts and specifications.

At the start of the mitigation phase, the state requested that the court merge a number of the counts and specifications, and Obermiller waived the presentation of mitigating evidence [and otherwise would not allow his attorneys to put on any mitigating evidence after the panel determined that Obermiller] was competent to do so.   [The] panel merged many of the counts and declared that it would sentence Obermiller on the following charges: Count 1 with specifications for course of conduct and witness murder, Count 4 with specifications for course of conduct, witness murder, and felony murder predicated on rape, Count 12 (rape), Count 13 (aggravated burglary), Count 15 (theft), Count 16 (theft), Count 17 (attempted aggravated arson), and Count 18 (burglary).

Ultimately, the panel unanimously sentenced him to death on Counts 1 and 4 and to an aggregate sentence of 32.5 years on the remaining counts.

* * * The record is replete with evidence that Obermiller's objective was to plead guilty as charged and to offer no mitigation during sentencing.   Obermiller instructed his counsel to refrain from objecting, cross-examining the state's witnesses, offering opening statements and closing arguments during both phases, and offering any mitigating evidence.   Had defense counsel ignored Obermiller's instructions, cross-examination and other tools of advocacy might have interfered with Obermiller's desire to present no defense.

*See State v. Obermiller*, 147 Ohio St.3d 175, 2016-Ohio-1594, 63 N.E.3d 93, ¶ 4-21, 90-91 (hereafter referred to as "*Obermiller* I").

{¶4} The panel subsequently sentenced Obermiller to death for the aggravated murders plus 32.5 years in prison for his noncapital offenses. On direct appeal to the Ohio Supreme Court, Obermiller raised ten propositions of law that challenged the voluntariness of his plea, the effectiveness of his trial counsel, prosecutorial misconduct, and other issues. The Ohio Supreme Court affirmed the convictions, and, after conducting an independent review, also affirmed the imposition of the death penalty. *Id.*

{¶5} Obermiller filed a petition to vacate his conviction under R.C. 2953.21, asserting sixteen claims for relief. On January 29, 2014, the presiding judge of the three-judge panel denied the petition.

## Petition to Vacate Conviction

{¶6} In the assigned errors, Obermiller argues that the trial court erred in denying his petition for postconviction relief because he set forth meritorious claims that support the vacation of his convictions. We shall address each assigned error in turn and combine the claims where it is appropriate to do so.

{¶7} We review a trial court's decision on a petition for postconviction relief for an abuse of discretion. *State v. White*, 8th Dist. Cuyahoga No. 90544, 2008-Ohio-4228, ¶ 19, citing *State v. Calhoun*, 86 Ohio St.3d 279, 281, 1999-Ohio-102, 714 N.E.2d 905.

{¶8} Under R.C. 2953.21, a prisoner may obtain postconviction relief "only if the court can find that there was such a denial or infringement of the rights of the prisoner as to render the judgment void or voidable under the Ohio Constitution or the United States Constitution." *State v. Perry*, 10 Ohio St.2d 175, 226 N.E.2d 104 (1967), paragraph four of the syllabus. A postconviction petition does not provide a petitioner a second opportunity to litigate

his or her conviction. *State v. Steffen*, 70 Ohio St.3d 399, 410, 639 N.E.2d 67 (1994); *State v. Smith*, 8th Dist. Cuyahoga No. 93534, 2010-Ohio-1869, ¶ 11. Rather, it is a means to reach constitutional issues that would otherwise be impossible to reach because the evidence supporting those issues is not contained in the record. *Id.* at ¶ 12.

{¶9} Pursuant to R.C. 2953.21(C), a trial court may deny a petition for postconviction relief without holding an evidentiary hearing where the petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that petitioner set forth sufficient operative facts to establish substantive grounds for relief. *Calhoun*, 86 Ohio St.3d at 281.

{¶10} Res judicata is a proper basis upon which to dismiss a R.C. 2953.21 petition without a hearing. *Smith*, 2010-Ohio-1869 at ¶ 23, quoting *State v. Banks*, 10th Dist. Franklin No. 08AP-722, 2009-Ohio-1667, ¶ 10. As stated in *Perry*:

> Under the doctrine of res judicata, a final judgment of conviction bars the convicted defendant from raising and litigating in any proceeding, except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial which resulted in that judgment of conviction or on an appeal from that judgment.

*Id.* at 180. A petition for postconviction relief may be denied on the basis of res judicata if the trial court "finds that the petitioner could have raised the issues in the petition at trial or on direct appeal without resorting to evidence beyond the scope of the record." *State v. Abdussatar*, 8th Dist. Cuyahoga No. 92439, 2009-Ohio-5232, ¶ 16, citing *State v. Scudder*, 131 Ohio App.3d 470, 475, 722 N.E.2d 1054 (10th Dist.1998).

### R.C. 2953.21 and Meaningful Review
### R.C. 2953.21 and Discovery

{¶11} In the first assigned error, Obermiller argues that R.C. 2953.21 fails to provide meaningful review because res judicata can be applied to bar claims that were not previously

raised, and R.C. 2953.21 presents "little opportunity for factual development." In the third assigned error, Obermiller also argues that because petitioners cannot conduct discovery, there is little opportunity for development of facts to support postconviction claims. Obermiller notes that the Death Penalty Task Force appointed by the Chief Justice of the Ohio Supreme Court and the Ohio State Bar Association issued a final report that includes recommendations on providing for depositions and subpoenas during discovery in postconviction relief, and after his conviction, these recommendations were adopted in the Revised Code.

{¶12} As an initial matter, we note that state collateral review itself is not a constitutional right; rather, it is a civil attack on a judgment. *Calhoun*, 86 Ohio St.3d at 281. As such, the petitioner has only those rights granted by the statute. *Id*.; *Steffen*, 70 Ohio St.3d at *id*., 639 N.E.2d 67 ("Postconviction review is a narrow remedy, since res judicata bars any claim that was or could have been raised at trial or on direct appeal.").

{¶13} As to the rule permitting application of res judicata to bar claims that were not raised, this rule is applicable where the claim could have been raised on direct appeal. *Perry,* 10 Ohio St.2d 175, at paragraph four of the syllabus. We further note that R.C. 2953.21 has been held to be constitutional. *See State v. Sklenar*, 71 Ohio App.3d 444, 594 N.E.2d 88 (9th Dist.1991). In *State v. Szefcyk*, 77 Ohio St.3d 93, 671 N.E.2d 233 (1996), the Ohio Supreme Court explained:

> Res judicata is applicable in all postconviction relief proceedings. Our holding today underscores the importance of finality of judgments of conviction. "Public policy dictates that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest, and that matters once tried shall be considered forever settled as between the parties." [Citation omitted.] We have stressed that '[the] doctrine of res judicata is not a mere matter of practice or procedure inherited from a more technical time than ours. It is a rule of fundamental and substantial justice, "of public policy and of private peace," which should be cordially regarded and enforced by the courts. * * * " [Citation omitted.] *Federated Dept. Stores, Inc. v. Moitie* (1981), 452 U.S. 394, 401, 101 S.Ct. 2424, 2429, 69 L.Ed.2d 103, 110-111.

*Id.* at ¶ 95.

{¶14} 1This court has recognized that the United States Court of Appeals for the Sixth Circuit has disapproved of the application of res judicata for claims that could have been raised but were not raised on direct appeal. *State v. Lewis*, 8th Dist. Cuyahoga No. 73736, 1998 Ohio App. LEXIS 5777, 9 (Dec. 3, 1998). However, the *Lewis* court stated:

> [T]he Sixth Circuit Court of Appeals' dissatisfaction with Ohio's postconviction relief process and the *Perry* decision does not require us to hold the postconviction relief process invalid. *Perry* remains good law in this State.

*Id. Accord State v. Zich*, 6th Dist. Lucas No. L-15-1263, 2017-Ohio-414, ¶ 27 ("Notably, appellant does not assert that the Sixth Circuit actually deemed R.C. 2953.21 to be unconstitutional."); *State v. Goff*, 12th Dist. Clinton No. CA2000-05-014, 2001-Ohio-4215; *State v. La Mar*, 4th Dist. Lawrence No. 98 CA 23, 2000 Ohio App. LEXIS 1211 (Mar. 17, 2000); *State v. Cassano*, 5th Dist. Richland No. 12CA55, 2013-Ohio-1783, ¶ 32.

{¶15} As to the discovery issue, in 2014 when Obermiller's petition was ruled upon, the postconviction statutes did not contemplate discovery in the initial stages of a postconviction proceeding. *State v. Hutton*, 8th Dist. Cuyahoga No. 76348, 2004-Ohio-3731, ¶ 22. Rather, the petitioner was entitled to discovery to develop his claims, and to experts to aid in that discovery, only if the petition and its supporting evidentiary material demonstrate substantive grounds for relief. *State ex rel. Love v. Cuyahoga Cty. Prosecutor's Office*, 87 Ohio St.3d 158, 159, 1999-Ohio-314, 718 N.E.2d 426; *State v. Leonard*, 157 Ohio App.3d 653, 660, 2004-Ohio-3323, 813 N.E.2d 50 (1st Dist.). This rule has passed constitutional scrutiny. *State v. Hunter*, 1st Dist. Hamilton No. C-090569, 2012-Ohio-2859, ¶ 65; *State v. Jones*, 1st Dist. Hamilton No. C-990813, 2000 Ohio App. LEXIS 6197 (Dec. 29, 2000). Similarly, in *Hutton*, this court rejected the claim that postconviction proceedings fail to provide meaningful review

because they allow for little opportunity for factual development. *Id*. at ¶ 25-26. *Accord State v. Hale*, 8th Dist. Cuyahoga No. 103654, 2016-Ohio-5837, ¶ 57; *State v. Jackson*, 8th Dist. Cuyahoga No. 104132, 2017-Ohio-2651, ¶ 87.

{¶16} In 2017, R.C. 2953.21 was amended to authorize trial courts to grant postconviction petitioners in capital cases discovery for good cause shown, adopting the deposition and subpoena recommendations of the task force. We recognize that in *State v. Ketterer*, 2017-Ohio-4117, 92 N.E.3d 21 (12th Dist.), the court remanded a matter decided before this amendment in order "for the trial court to determine whether newly amended R.C. 2953.21 applies to appellant's [postconviction] petitions, and if so, whether appellant has shown good cause under the new statute and is entitled to discovery." *Id*. at ¶ 47.

{¶17} Here, however, we conclude that the trial court conducted a thorough analysis of each claim and provided Obermiller with a meaningful review of his petition, and under the circumstances of this case, the trial court did not err in denying discovery.

{¶18} The first and third assigned errors lack merit.

### ReConvening the Original Three-Judge Panel

{¶19} Obermiller next argues that the trial court erred by ruling on the petition and denied it without reconvening the three-judge panel that determined his guilt and sentence.

{¶20} This claim was rejected in *Ketterer,* 2017-Ohio-4117, 92 N.E.3d 21 (12th Dist.). The court explained:

> [The] language in R.C. 2945.06 above unambiguously indicates that the duties of a three-judge panel are restricted to the "trial" phase of a capital case and the issues "arising upon the trial." Our research indicates that in capital murder cases, a single judge, and not a three-judge panel, has routinely ruled upon a capital defendant's PCR petition. *See, e.g., State v. Rojas*, 1st Dist. Hamilton No. C-950091, 1995 Ohio App. LEXIS 5764 (Dec. 19, 1995). The one exception was a case from the Second Appellate District where a PCR petition was ruled upon by a three-judge panel. *State v. Bays*, 2d Dist. Greene No. 96-CA-118, 1998 Ohio App. LEXIS 226 (Jan. 30, 1998). Whether R.C. 2945.06 and 2953.21

require a three-judge panel to rule upon a PCR petition was not at issue in that case. We further note that the Ohio Supreme Court has denied the affidavit of a capital defendant seeking to disqualify a trial judge who had presided over the three-judge panel that sentenced the defendant to death from ruling upon the defendant's PCR petition. *In re Disqualification of Nastoff*, 134 Ohio St.3d 1232, 2012-Ohio-6339, 983 N.E.2d 354. The Supreme Court denied the affidavit of disqualification and then held, "The case may proceed before Judge Nastoff." *Id*. at ¶ 12.

*Id.* at ¶ 20.

{¶21} The *Ketterer* court additionally rejected the argument that the Ohio Supreme Court has required reconvening the original panel in *State v. Stumpf*, 32 Ohio St.3d 95, 512 N.E.2d 598 (1987), *State v. Davis*, 38 Ohio St.3d 361, 528 N.E.2d 925 (1988), and *State v. Filiaggi*, 86 Ohio St.3d 230, 1999-Ohio-99, 714 N.E.2d 867. The *Ketterer* court found that these cases did not support Ketterer's argument because they did not involve petitions for postconviction relief.

{¶22} The second assigned error is without merit.

### Denial of Claims that the Death Penalty Violates the Constitution and International Law

{¶23} Obermiller next argues that the trial court erred in overruling his second claim for relief, that argues that the death penalty violates international law. In his fourth claim for relief, that the death penalty violates the Constitution of the United States and the Ohio Constitutions.

{¶24} We note that in the direct appeal, the Ohio Supreme Court rejected Obermiller's various constitutional challenges to the death penalty and rejected the argument that the death penalty violates international law. *See Obermiller* I, 147 Ohio St.3d 175, at ¶ 111. These claims, and any related claims, are now barred by res judicata. *Perry*, 10 Ohio St.2d at 181, 226 N.E.2d 104.

{¶25} Moreover, the Ohio Supreme Court has repeatedly rejected numerous constitutional challenges to Ohio's death penalty process. *See State v. Beasley*, 153 Ohio St.3d 497, 2018-Ohio-493, 108 N.E.3d 1028, ¶ 228, citing *State v. Kirkland*, 140 Ohio St.3d 73,

2014-Ohio-1966, 15 N.E.3d 818, ¶ 106-120.   In *Kirkland*, the court rejected claims that the Ohio death penalty statutes result in arbitrary and unequal punishment, leads to arbitrary imposition of the death penalty, utilizes unreliable sentencing procedures, burdens a defendant's right to a jury trial, is imposed in a racially discriminatory manner, is unconstitutionally vague, and does not provide for meaningful proportionality and appropriateness reviews.   *Accord State v. Mammone*, 139 Ohio St.3d 467, 2014-Ohio-1942, 13 N.E.3d 1051, ¶ 183.   *See also State v. Mink*, 101 Ohio St.3d 350, 2004-Ohio-1580, 805 N.E.2d 1064, ¶ 103 (rejecting arbitrariness challenge, and claims that death penalty is unconstitutional because it is neither the least restrictive punishment nor an effective deterrent, pursuant to *State v. Jenkins*, 15 Ohio St.3d 164, 169, 473 N.E.2d 264 (1984));   *State v. Waddy*, 10th Dist.   Franklin No. 96APA07-863, 1997 Ohio App. LEXIS 2542 (June 10, 1997) (rejecting claim, based upon study by Professor Hans Zeisel, that capital jurors do not understand their responsibilities and apply inaccurate standards); *State v. Buell*, 22 Ohio St.3d 124, 138, 489 N.E.2d 795 (1986) (rejecting the claim that R.C. 2929.03(D)(1) improperly utilizes presentence investigations requested by a defendant); *Mammone* (rejecting the claim that R.C. 2929.03(D)(1) improperly utilizes presentence investigations requested by a defendant).

{¶26} Additionally, Ohio courts have repeatedly held that Ohio's death penalty does not violate international law.   *Beasley* at ¶ 228; *Mammone*; *State v. Short*, 129 Ohio St.3d 360, 2011-Ohio-3641, 952 N.E.2d 1121, ¶ 137-138; *State v. Craig*, 110 Ohio St.3d 306, 2006-Ohio-4571, 853 N.E.2d 621, ¶ 127.

{¶27} Therefore, the fourth assigned error lacks merit.

**Discovery and Relief on Challenge to Grand Jury Foreman**

**{¶28}** Obermiller next argues that the trial court erred in overruling his fourth claim for relief in which he argues that the foreman of the grand jury that initially indicted him (issuing a 13-count indictment alleging capital murder and other offenses) was African-American, but the foreman of the second grand jury that indicted him (in a 19-count indictment that alleged capital murder and other offenses) was Caucasian, and his conviction is based upon the second indictment.

**{¶29}** Evidence as to the manner by which the grand jury foreperson was chosen could have been sought prior to Obermiller's trial. *State v. Jackson*, 11th Dist. Trumbull No. 2004-T-0089, 2006-Ohio- 2651, ¶ 68.

**{¶30}** In any event, in *State v. Hughbanks*, 1st Dist. Hamilton No. C-010372, 2003-Ohio-187, the court explained this challenge as follows:

> If a grand-jury foreperson is selected from within the ranks of a properly constituted grand jury, and the foreperson's role is essentially ministerial, purposeful discrimination in the selection of a grand-jury foreperson will not provide a basis for reversing a conviction or dismissing an indictment. *See Hobby v. United States* (1984), 468 U.S. 339, 344, 104 S.Ct. 3093, 82 L.Ed.2d 260. If, on the other hand, the foreperson is selected from outside the system used to compose the balance of the grand jury, but possesses the same voting power as the other grand jurors and takes on, by virtue of the status of foreperson, duties that are merely ministerial in nature, we must treat a claim of discrimination in the selection of the grand-jury foreperson as one alleging discrimination in the composition of the grand jury itself. *See Campbell v. Louisiana* (1998), 523 U.S. 392, 396-397, 118 S.Ct. 1419, 140 L.Ed.2d 551.
>
> To prove purposeful discrimination in the selection of grand jurors, the accused must demonstrate that the procedure employed to select the grand jurors resulted in "substantial underrepresentation" of an "identifiable group." To show substantial underrepresentation, and thus establish a prima facie case of purposeful discrimination, the accused must (1) "establish that the group is one that is a recognizable, distinct class, singled out for different treatment under the laws, as written or as applied," (2) prove "the degree of underrepresentation * * *, by comparing the proportion of the group in the total population to the proportion called to serve as grand jurors, over a significant period of time," and (3) support "the presumption of discrimination raised by the statistical showing" with proof that "the selection procedure * * * is susceptible of abuse or is not racially neutral." Once the defendant has established a prima facie case of

discriminatory purpose, the burden shifts to the state to rebut that case. *Id*. at 494-495, 97 S.Ct. 1272.

Hughbanks offered in support of his petition evidence to show that African-American and female residents of the county were "seriously underrepresented" as grand-jury forepersons. The record is unclear, however, concerning the precise procedure employed by the county to select the foreperson for the grand jury that indicted him. And Hughbanks presented no evidence that that procedure, whatever its particulars, resulted in substantial underrepresentation of either African-Americans or women on his grand jury or on grand juries over a significant period of time.

Thus, the evidence offered in support of the fourth claim failed to establish a prima facie case of purposeful discrimination in the selection of grand jurors.

*Id*. at ¶ 35-39.

{¶31} In this matter, the record is unclear as to how the grand jury foreman was selected, and there has been no evidence that the procedure employed by the county to select the foreperson resulted in substantial underrepresentation of either African-Americans or women on his grand jury or on grand juries over a significant period of time. Obermiller merely asserted that the first foreman, who presided over the grand jury that issued capital murder charges, was African-American, and the second foreman, who also presided over a grand jury that issued capital charges, was Caucasian. Accordingly, the trial court properly rejected this claim.

{¶32} The fifth assigned error is without merit.

### Discovery and Relief on *Brady* Claim

{¶33} In his sixth assigned error, Obermiller asserts that the trial court erred in denying his sixth claim for relief that asserted a violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and in denying discovery on this claim. In support of this assigned error, Obermiller argues that the prosecuting attorney's office "has a history [of] suppressing material evidence," and other courts have determined that the office "suppressed

material evidence in other homicide investigations." In opposition, the state asserts that this claim is speculative and that it provided Obermiller with "open file" discovery.

{¶34} Under *Brady*, the suppression by prosecution of evidence favorable to an accused upon request violates due process where evidence is material either to guilt or to punishment, irrespective of good faith or bad faith of prosecution. *Id.* at 87.

{¶35} However, "mere speculation is not sufficient to sustain a *Brady* claim." *Lang v. Bobby*, N.D.Ohio No. 5:12-CV-2923, 2015 U.S. Dist. LEXIS (Mar. 27, 2015), citing *Cunningham v. Wenatchee*, 345 F.3d 802, 812 (9th Cir.2003). Further, the trial court was not required to examine the prosecutor's file based on speculation that the prosecutor might have withheld exculpatory evidence. *State v. Frazier*, 115 Ohio St.3d 139, 2007-Ohio-5048, 873 N.E.2d 1263, ¶ 123, citing *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, 840 N.E.2d 1032, and *State v. Hanna*, 95 Ohio St.3d 285, 2002-Ohio-2221, 767 N.E.2d 678.

{¶36} The sixth assigned error lacks merit.

### Discovery and Relief on Ineffective Assistance Claim

{¶37} In the seventh and tenth assigned errors, Obermiller asserts that the trial court erred in denying his claims that he was denied effective assistance of trial counsel during the pretrial, trial, and mitigation phases, and also erred in denying him factual development of these claims.

{¶38} A claim of ineffective assistance of counsel was raised in Obermiller's direct appeal. *Obermiller* I, 147 Ohio St.3d 175, at ¶ 82-92. In rejecting this claim, the Ohio Supreme Court noted that defense counsel filed approximately 30 pretrial motions (including a motion to suppress Obermiller's statements),"hired a defense investigator, a mitigation expert, and a psychologist to evaluate Obermiller's competency, and obtained numerous documents regarding Obermiller's history." The court held:

> Given all of the circumstances, Obermiller has not demonstrated that defense counsel's performance was constitutionally deficient. The record is replete with evidence that Obermiller's objective was to plead guilty as charged and to offer no mitigation during sentencing. Obermiller instructed his counsel to refrain from objecting, cross-examining the state's witnesses, offering opening statements and closing arguments during both phases, and offering any mitigating evidence. Had defense counsel ignored Obermiller's instructions, cross-examination and other tools of advocacy might have interfered with Obermiller's desire to present no defense.

*Id.* at ¶ 91. Therefore, res judicata bars these claims.

{¶39} In any event, a "defense attorney's failure to reasonably investigate a defendant's background and present mitigating evidence * * * at sentencing can constitute ineffective assistance," but a petitioner cannot establish prejudice resulting from counsel's failure to conduct a thorough investigation when the petitioner refuses to allow the presentation of any mitigating evidence at the sentencing hearing. *Henness v. Bagley*, 644 F.3d 308, 323 (6th Cir.2011), citing *Schriro v. Landrigan*, 550 U.S. 465, 476-477, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007). *Accord Coleman v. Mitchell*, 244 F.3d 533, 545 (6th Cir.2001) ("An attorney's conduct is not deficient simply for following his client's instructions.").

{¶40} Accordingly, this claim is without merit.

{¶41} The seventh and tenth assigned errors lack merit.

**Discovery and Relief on Challenge to Guilty Plea**

{¶42} In the eighth assigned error, Obermiller asserts that the trial court erred in denying his claim challenging the voluntariness of his guilty plea. He maintains that he suffered from mental illness so he could not understand the nature of his plea. He also complains that the trial court erred in denying him factual development of this claim.

{¶43} In his direct appeal, Obermiller maintained that the trial court erred in denying his motion to suppress and that this ruling "tainted his decision to plead guilty to the charges against him." *Obermiller* I, 147 Ohio St.3d 175, at ¶ 54. The Ohio Supreme Court specifically noted

that "Obermiller has not challenged his guilty plea on appeal." *Id.* at ¶ 56. Accordingly, this claim, although not explicitly raised in the direct appeal, could have been raised, and it is therefore barred by res judicata. Moreover, as noted by the trial court:

> [T]he transcript directly refutes [Obermiller's] claims. The Court advised [Obermiller] of his rights and conducted an in-depth colloquy with [Obermiller] about any medications he was taking and the seriousness of his decision. * * * [On the morning of the plea, the Court asked Obermiller about any drugs that could alter his thinking. Obermiller] informed the Court that he was on Neurontin and Remeron * * * "for mental health reasons." * * *[Obermiller] responded that he had not received any medication on the day of his plea. Furthermore [Obermiller] agreed that he had been on the medication long enough that his body had adjusted to it. Upon being asked by the Court to further consult with his attorneys regarding the decision that he was making, [Obermiller] responded, "We have been over this already. It's not going to change my decision."

{¶44} Finally, we note that the trial court referred Obermiller to the Court Psychiatric Clinic for a competency evaluation and he was determined to be competent and able to understand the ramifications of his plea.

{¶45} Accordingly, the eighth assigned error lacks merit.

### Failure to Grant Relief on the Claim that Obermiller Was Not Competent to Waive Mitigation

{¶46} Obermiller next asserts that the trial court erred in rejecting his claim that he lacked competence to waive a mitigation hearing. Specifically, he argues that he had been prescribed Lithium prior to the offenses, but at the time he waived mitigation, he was receiving different medications that impacted his mental state and caused him to waive the presentation of mitigating evidence at trial.

{¶47} In *State v. Ashworth*, 85 Ohio St.3d 56, 1999-Ohio-204, 706 N.E.2d 1231, the Ohio Supreme Court held that a waiver of the presentation of mitigating evidence must be

knowing and voluntary, and that to ensure this, the trial court must conduct an inquiry of the defendant on the record. *Id.* at paragraph one of the syllabus. The record must affirmatively demonstrate that (1) the court has informed the defendant of the right to present mitigating evidence, (2) the court has explained what mitigating evidence is, (3) the defendant understands the importance of mitigating evidence, (4) the defendant understands the use of mitigating evidence to offset the aggravating circumstances, (5) the defendant understands the effect of failing to present mitigating evidence, and (6) the defendant wishes to waive mitigation. *Id.* at 62.

{¶48} In the direct appeal of this case, the Ohio Supreme Court noted that the trial court conducted an *Ashworth* hearing prior to accepting Obermiller's waiver of mitigation and "reasonably concluded that his decision to waive mitigation was knowing, intelligent, and voluntary." *Obermiller* I, 147 Ohio St.3d 175, at fn. 3, ¶ 141. The court further noted that Obermiller was not challenging the *Ashworth* hearing on appeal. *Id.* at fn. 3. Accordingly, this claim is barred by res judicata.

{¶49} In any event, the record indicates that the trial court fully complied with *Ashworth*. Further, as explained by the trial court:

> [Obermiller] insisted repeatedly that his counsel not put forth any evidence in the mitigation phase. Furthermore, as previously stated, [Obermiller] was found competent to waive mitigation by the Court Psychiatric Clinic.

{¶50} Moreover, our review of the record demonstrates that the state's expert, Dr. Phillip Resnick, provided the court with a detailed report outlining Obermiller's history of substance abuse and psychiatric history. Dr. Resnick also "systematically screened Mr. Obermiller for current symptoms of depression, mania * * *, psychosis * * *, posttraumatic stress disorder * * *, and anxiety disorders[.]" Additionally, Dr. Resnick determined that Obermiller had "insight into his current situation and [h]is judgment was fair based upon his response to hypothetical

situations." Obermiller did not have delusions or hallucinations. Dr. Resnick also remarked that Obermiller "never changed or regretted his decision to plead guilty," his decision to waive mitigation was "firm," and he has "never changed in his desire to receive a death sentence." Dr. Resnick was fully qualified to evaluate whether Obermiller's prescription medications would have affected his competency. *Accord State v. Mink*, 101 Ohio St.3d 350, 2004-Ohio-1580, 805 N.E.2d 1064, ¶ 30-34. Therefore, this assigned error lacks merit.

### Failure to Grant Relief on Claim of Cumulative Error

{¶51} In the eleventh assigned error, Obermiller argues that the trial court erred in refusing to grant him relief on his claim of cumulative error.

{¶52} Under the doctrine of cumulative error, a conviction will be reversed when the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial even though each of the errors does not individually constitute cause for reversal. *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 132; *State v. Garner*, 74 Ohio St.3d 49, 64, 1995-Ohio-168, 656 N.E.2d 623. However, the doctrine of cumulative error is inapplicable when the alleged errors are found to be harmless or nonexistent. *Id.*; *State v. Brown*, 100 Ohio St.3d 51, 2003-Ohio-5059, 796 N.E.2d 506, ¶ 48.

{¶53} Inasmuch as we have determined that none of the individual claims of error are well taken, the claim of cumulative error must likewise fail.

{¶54} The eleventh assigned error lacks merit.

{¶55} Judgment is affirmed.

It is ordered that appellee recover of and appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the

Rules of Appellate Procedure.

_____
PATRICIA ANN BLACKMON, PRESIDING JUDGE

ANITA LASTER MAYS, J., and
LARRY A. JONES, SR., J., CONCUR

# **APPENDIX**

Assignments of Error

> I. The presiding judge abused her discretion when she denied Obermiller relief on the first ground for relief.

> II. The presiding judge erred when she denied Obermiller's motion to reconvene the three judge panel.

> III. The presiding judge abused her discretion when she denied Obermiller's postconviction petition without affording him an opportunity to conduct discovery.

> IV. The presiding judge abused her discretion when she overruled the second and fifth grounds for relief.

> V. The presiding judge abused her discretion when she denied Obermiller factual development and relief on the fourth ground for relief.

> VI. The presiding judge abused her discretion when she denied Obermiller factual development and relief on the sixth ground for relief.

VII.   The presiding judge abused her discretion when she denied Obermiller

factual development and relief on the eighth ground for relief.

VIII.   The presiding judge abused her discretion when she denied Obermiller factual development and relief on the ninth ground for relief.

IX.   The presiding judge abused her discretion when she denied Obermiller factual development and relief on the tenth and eleventh grounds for relief.

X.   The presiding judge erred when she denied Obermiller Factual development and relief on the twelfth, thirteenth, fourteenth and fifteenth grounds for relief.

XI.   The presiding judge abused her discretion when she denied Obermiller factual development and relief on the sixteenth ground for relief.